# United States Court of Appeals
## For the First Circuit

No. 00-1940

UNITED STATES OF AMERICA,

Appellee,

v.

KIEU MINH NGUYEN,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Selya, Stahl, and Lynch,
Circuit Judges.

Peter E. Rodway, Rodway & Horodyski, James R. Van Camp,
and Van Camp, Hayes & Meacham, P.A., on brief for appellant.
Margaret D. McGaughey, Assistant United States Attorney,
and Jay P. McCloskey, United States Attorney, on brief for appellee.

**LYNCH, <u>Circuit Judge</u>**. Kieu Minh Nguyen was convicted of violating the Hobbs Act, 18 U.S.C. § 1951, by conspiring to obstruct commerce by means of robbery, as well as by aiding and abetting that crime.[1]  He appeals his conviction and sentence of 109 months imprisonment.  We affirm.

## I. Background

We review the evidence in the light most favorable to the verdict.

Between February and May 1998, Nguyen worked for Nail Time, a nail salon in Portland, Maine.  While employed there, he lived at the home of the shop's owner, Monica Tran.

Nail Time was strictly a cash business with gross receipts of $800 to $1,000 a day.  The shop was small, such that at the end of every workday employees could see Monica put the day's receipts into a purse and walk home with it.  Moreover, because Nguyen was living at Monica's apartment, he

---

[1]    Nguyen was acquitted on a second count charging that he had used and carried a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c).

was able to see Monica store the purse in a closet when she arrived home.

Eventually, personal problems developed between Monica and Nguyen, resulting in the termination of his employment at Nail Time. Nguyen then moved to North Carolina.

In June 1998, Nguyen had a group of people stay at his home for several nights; among them were four individuals, named Cong, Thong, Nam, and Quyen. Nguyen told the group about Monica and how she kept her business earnings in a black bag stored in her apartment closet. Nguyen recruited the four to go to Maine and steal the contents of the bag. He had someone give the group directions to Monica's apartment and gave Nam a key to the front door of the apartment building. Nguyen also gave the group $300 to cover traveling expenses. During this planning period, Nguyen observed Cong with a handgun.

On June 23, 1998, the four men sent by Nguyen burst into Monica's apartment; one of them, Cong, was armed. The four bound and gagged Monica's two young daughters, who were alone inside, and ransacked the apartment in search of the black bag containing the earnings of Nail Time. Unable to

-3-

find the bag, the robbers left with personal belongings -- a stereo and some jewelry. The four returned to North Carolina within several days of the robbery and stayed overnight with Nguyen.

## II. Sufficiency of the Evidence

Nguyen argues that the evidence at trial was insufficient to support a Hobbs Act conviction in two respects. First, he argues that there was insufficient evidence of any interstate commerce nexus. Second, he argues that there was insufficient evidence that he conspired to commit robbery, as opposed to the lesser offense of theft.

A. Commerce

The Hobbs Act prohibits robbery or conspiracy to rob where such crime "in any way or degree, obstructs, delays, or affects commerce." 18 U.S.C. § 1951(a). Nguyen concedes, as he must, that if a robbery even minimally depletes the assets of an entity doing business in interstate commerce, like Nail Time,[2] then that suffices to meet the Hobbs Act's interstate commerce element. See, e.g., United States v. DiGregorio, 605

---

[2] The evidence showed that Nail Time ordered a substantial proportion of its products from out of state.

F.2d 1184, 1190-91 (1st Cir. 1979).  But he makes two attempts to distinguish that principle from this case.

First, he argues that, although the conspirators had hoped to steal the earnings of Nail Time stored in Monica's purse, the only articles they _actually_ stole were a stereo and jewelry.  But this distinction is of no avail in the context of a conspiracy charge.  All that matters is that Nguyen entered a conspiracy whose _objective_ was to steal the assets of an entity in interstate commerce.  That the conspiracy failed to accomplish such objective is irrelevant.  _E.g._, United States v. DiCarlantonio, 870 F.2d 1058, 1061 (6th Cir. 1989); United States v. Brantley, 777 F.2d 159, 162 (4th Cir. 1985).

Second, Nguyen argues that the conspirators did not necessarily know whether the money in the black bag they planned to steal constituted Nail Time's operating cash (used by the business to purchase items in interstate commerce) or merely Monica's take-home profits.  But the interstate commerce element does not turn on such accounting niceties. Cf., e.g., United States v. Devin, 918 F.2d 280, 293-94 (1st Cir. 1990) (considering it inconsequential, in Hobbs Act

extortion case, that extorted funds came from business owner's personal funds rather than from corporate funds, because jury could infer that depletion of former ultimately effects a depletion of latter) (citing DiGregorio, 605 F.2d at 1191-92). The evidence need only support a "realistic probability" that the contemplated robbery would have "some slight impact" on interstate commerce. Id. at 293. Such probability is easily established here, as the evidence clearly shows that the conspirators planned to steal the earnings of a business in interstate commerce. Proof beyond that, e.g., that the precise funds stolen were certain to be used in future business purchases, is not required.

B. Robbery

As defined in the Hobbs Act, "[t]he term 'robbery' means the unlawful taking or obtaining of personal property . . . in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury." 18 U.S.C. § 1951(b)(1). Nguyen does not contest that his co-conspirators committed robbery. Rather, he argues that it was not foreseeable to him that they would commit robbery as opposed to simple theft. But the evidence was not

insufficient on this point.  Nguyen knowingly dispatched his co-conspirators to break into Monica's home and steal her black bag.  He knew that at least one member of this unwholesome crew carried a gun.  He also knew, from living with Monica, that her apartment was frequently occupied by family members and house guests.  Indeed, Monica specifically testified that she rarely would leave her black bag at the apartment when it was not occupied; rather, she would only leave it at home if her mother was there to look after it.  Further, there was evidence that one of Nguyen's motives in forming the conspiracy was to follow through on a grudge he held against Monica's brother, Kevin, who lived in the apartment: Nguyen stated, in reference to the planned crime, that Kevin would "get what is coming to him";[3] and the robbers specifically asked for Kevin on entering the apartment.  On these facts, a jury could easily find that robbery was a foreseeable outcome of the conspiracy.

### III.  Sentencing

---

[3]  Nguyen's suggestion that this statement was intended to mean only that "Kevin's life could be beset by bad karma as a result of some evil deed attributed to him" is inventive, but is hardly the only conclusion a rational jury could reach.

Nguyen also appeals his sentence, specifically the five-level increase the district court imposed under U.S.S.G. § 2B3.1(b)(2)(C) on the ground that a firearm was possessed during the commission of the robbery. He appeals on two grounds.

First, Nguyen argues that the court committed clear error in finding that Nguyen should have foreseen that a co-conspirator would carry a firearm in the course of the robbery. See United States v. Carrillo-Figueroa, 34 F.3d 33, 42 (1st Cir. 1994) (applying clear error review to similar claim). The district court erred, Nguyen contends, by relying on testimony struck during trial for lack of foundation.

But this contention is wholly inaccurate. The district court relied on the testimony of Cong, who testified both that Nguyen saw him with a firearm while he was at Nguyen's house as the robbery was being planned, and also that he thought Nguyen knew that he would take the firearm with him to use in the robbery. Only the latter testimony was struck for lack of foundation during trial, and it was only the former testimony that the district court relied on in imposing the firearm enhancement. In ruling on the issue, the court

noted that all that mattered was whether Nguyen should have foreseen (rather than whether he knew) that a firearm would be possessed during the offense,[4] and it concluded that:

> the testimony of Cong was clear that he saw, he, the defendant, saw Cong with the weapon in advance and therefore . . . it was certainly foreseeable that Cong would be in possession of the firearm during the offense.

Thus the district court did not commit the error alleged by Nguyen.

Second, Nguyen argues that under Apprendi v. New Jersey, 530 U.S. 466 (2000), the facts underlying a potential sentencing enhancement should have been pled in the indictment. We decline to rule on whether Apprendi requires such facts to be pled in the indictment, for Apprendi does not apply here in any event, as Nguyen's sentence did not exceed the 20-year statutory maximum. See United States v. Robinson, 241 F.3d 115, 120-22 (1st Cir. 2001) (Apprendi applies only

---

[4] U.S.S.G. § 2B3.1(b)(2)(C) provides for a five-level enhancement "if a firearm was brandished, displayed, or possessed" during the offense. U.S.S.G. § 1B1.3(a)(1)(B) further provides that in a conspiracy case, specific offense characteristics such as this are determined not only on the basis of the defendant's own conduct, but also on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."

where defendant's actual sentence exceeds default statutory maximum).

Affirmed.