# United States Court of Appeals
# For the First Circuit

No. 04-1037

UNITED STATES OF AMERICA,

Appellee,

v.

OSVALDO RODRÍGUEZ-CASIANO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Selya, Dyk,[*] and Howard, Circuit Judges.

Raymond Sanchez Maceira, for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with
whom H.S. Garcia, United States Attorney, was on brief, for
appellee.

October 4, 2005

---

[*]Of the United States Court of Appeals for the Federal
Court, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>. In October 2001, a federal grand jury sitting in Puerto Rico returned a six-count indictment against Osvaldo Rodríguez-Casiano for his involvement in a pair of robberies of the homes of two local businessmen. Three counts charged Casiano with violating the Hobbs Act, 18 U.S.C. § 1951(a), and three counts charged him with the unlawful possession of a firearm in relation to a federal crime of violence (i.e., violating the Hobbs Act), 18 U.S.C. § 924(c). In October 2002, a jury convicted Casiano on all counts. For each conviction, the government was required to prove beyond a reasonable doubt that the robberies affected interstate commerce. On appeal, Casiano contends that the government failed to do so. We affirm.

We present the facts in the light most favorable to the verdict. <u>See</u> <u>United States</u> v. <u>Capozzi</u>, 347 F.3d 327, 328 (1st Cir. 2003). Casiano was a member of a six-person conspiracy to rob the homes of two local businessmen. One of the homes belonged to Orlando Ortiz-Bonilla, the owner of Ferretería Ouayabal, a hardware store located in Villalba, Puerto Rico. The other belonged to Antonio Rivera-Lopez, the owner of a gas company called Rivera Gas, which also was located in Villalba. There was evidence that both businesses engaged in interstate commerce as much of their inventory was procured from mainland United States suppliers.

On the morning of March 15, 2001, Casiano and his co-conspirators broke into Bonilla's home. Bonilla was at the

hardware store at the time of the robbery, but his wife was at home. The conspirators tied her up and stole $30,000 from the house. The stolen money was part of the hardware store's assets and was earmarked to pay the store's bills.

On the morning of June 1, 2001, Casiano and the other conspirators broke into Rivera-Lopez's house. Rivera-Lopez was home at the time of the robbery. The conspirators held a gun to his head and asked him where the money was located. He directed them to a briefcase which he used for his business. The conspirators took the briefcase and some jewelry.

The briefcase contained almost $6,000 in Rivera Gas receipts. Rivera-Lopez testified that he planned to use the money to provide a service for certain clients whereby he would cash their social security checks and then use the proceeds from these checks to pay his suppliers.

At the conclusion of the all of the testimony, Casiano filed a motion for a judgment of acquittal on the ground that the government failed to prove beyond a reasonable doubt that the robberies affected interstate commerce. See Fed R. Crim P. 29. He asserted that merely showing that business proceeds were stolen from a private home is insufficient to establish the requisite nexus with interstate commerce. The district court denied the motion.

Having filed a Rule 29 motion at the close of the evidence, Casiano has preserved his sufficiency challenge. See United States v. Van Horn, 277 F.3d 48, 54 (1st Cir. 2002). We consider his claim de novo, surveying the evidence in the light most favorable to the verdict. See United States v. Sebaggala, 256 F.3d 59, 63 (1st Cir. 2001). "The test is whether the evidence, construed favorably to the government, permitted rational jurors to conclude, beyond a reasonable doubt, that [Casiano] was guilty as charged." Id.

The Hobbs Act prohibits, inter alia, participating in a robbery that "in any way or degree obstructs, delays or affects commerce." 18 U.S.C. § 1951(a). The scope of the Hobbs Act extends as far as Congress's power to regulate conduct under the Commerce Clause. See Stirone v. United States, 361 U.S. 212, 215 (1960). The commerce element of the offense is met if the conduct in question creates "a realistic probability of a de minimis effect on interstate commerce."[1] Capozzi, 347 F.3d at 335 (quoting United States v. Butt, 955 F.2d 77, 80 (1st Cir. 1992)).

Casiano contends that a de minimis effect cannot be shown where the robbery is of an individual instead of a business. There is no merit to this contention. See United States v. McCormack,

_____

[1]A de minimis effect on interstate commerce is also an element of the firearm counts because the Hobbs Act is the predicate crime of violence for these offenses. See United States v. Wang, 222 F.3d 234, 240-41 (6th Cir. 2000).

-4-

371 F.3d 22, 28-29 (1st Cir. 2004); United States v. Nguyen, 246 F.3d 52, 54-55 (1st Cir. 2001).  Nevertheless, because "criminal acts that are directed at individuals rather than businesses" often have a less obvious effect on interstate commerce, we are more cautious in our application of the de minimis standard where the robbery was of a person or residence.  See McCormack, 371 F.3d at 28.

The government sought to prove the effect on interstate commerce by demonstrating that the robberies depleted the assets of the hardware store and the gas company, thereby reducing the funds available to these businesses to participate in interstate commerce.  This is a common method for proving the commerce element of a Hobbs Act offense.  See, e.g., Capozzi, 347 F.3d at 337; Nguyen, 246 F.3d at 54.

The proof presented by the government was adequate for the jury to find beyond a reasonable doubt that the robberies depleted each business's assets.  Bonilla provided uncontradicted testimony that the $30,000 stolen from his house was the property of the hardware store and was to be used to pay the company's invoices.  Rivera-Lopez provided similar testimony that the $6,000 taken from the briefcase belonged to his company and was to be used to provide a check cashing service to clients, with the proceeds of the checks being used to pay the bills of Rivera Gas.  This is all that is required to show a de minimis effect on interstate commerce

under a depletion-of-assets theory.  See Capozzi, 347 F.3d at 337.

That the money was located at private residences when stolen does

not remove the robberies from the ambit of the Hobbs Act.  See

United States v. Jamison, 299 F.3d 114, 121 (2d Cir. 2002)

(upholding a Hobbs Act conviction under a depletion-of-assets

theory based on the attempted robbery of an individual because the

money that was the subject of the robbery attempt belonged to two

businesses engaged in interstate commerce); Nguyen, 246 F.3d at 55

(upholding a Hobbs Act conviction where the defendant attempted to

rob an apartment to steal the assets of a business engaged in

interstate commerce).[2]

   **Affirmed**.

---

[2]At oral argument, Casiano suggested that the amount of monies stolen was not sufficiently large to establish a de minimis effect on commerce.  But we recently affirmed a Hobbs Act conviction based on the theft of a far smaller sum.  See United States v. Brennick, 405 F.3d 96, 100 (1st Cir. 2005) (stating that stealing $522 from a large retail store was sufficient to support a Hobbs Act conviction).