TORRUELLA, Circuit Judge
(Concurring).
I write separately, because although both the majority and I are required to affirm Jiménez’s conviction by reason of binding circuit precedent,[5] I believe that this precedent is based on an interpretation of the Hobbs Act, 18 U.S.C. § 1951(a), that extends Congress’ power to regulate interstate commerce beyond what is authorized by the Constitution.[6]
The unvarnished facts in this case are as follows: Jiménez and five other cohorts were “look[ing] for houses to rob.” See Government’s Brief at 6 (emphasis added). The group’s leader randomly chose a house, which they then proceeded to break into. Once inside, they found the owners of the house, husband and wife, asleep in an upstairs bedroom. Thereafter, two of the burglars forced the husband downstairs to the kitchen at gunpoint. Jiménez remained upstairs with the wife. While there, he heard a series of shots emanating from the downstairs area. One of the burglars had shot and wounded the husband, from which wounds he subsequently died. Before they left, the burglars *14 robbed the dying man of $600 he had stashed in a cabinet in his kitchen.
These facts spell out the criminal substance of this case. However, in its zeal to make this unfortunate incident into something it is not — criminal activity implicating core federal interests — the government adds the following circumstances that were revealed about the deceased husband, Carlos Flores-Rodríguez, in the course of the investigation of this local crime and which were presented as evidence in the case against Jiménez: (1) Flores-Rodríguez was the sole proprietor of a local Texaco gas station; (2) in the two months prior to the burglary, the gas station had purchased approximately 40,000 gallons of gasoline from the Hess Oil Refinery in the United States Virgin Islands; (3) on the night before the burglary, an employee of the gas station brought approximately $600 to Flores-Rodríguez at his home, which sum constituted the daily receipts of the gas station, and which Flores-Rodrí-guez placed inside his kitchen cabinet for safe keeping; and (4) the day after Flores-Rodriguez’s death, the gas station closed permanently.
Upon this exiguous thread of irrelevant evidence, the government casts a net that, if allowed to set without challenge, would elbow out large chunks of traditional state criminal jurisdiction and federalize such crimes. The issue does not relate to an ideologically charged debate about whether or not federal is better than state action. See Sara Sun Beale, Too Many and Yet Too Few: New Principles to Define the Proper Limits for Federal Criminal Jurisdiction, 46 Hastings L.J. 979 (1995). The point in question is about giving validity to the constitutional dogma that establishes that, other than by constitutional exception, “the suppression of violent crime and vindication of its victims” is a power that “the Founders denied the National Government and reposed in the States.” United States v. Morrison, 529 U.S. 598, 618, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). Although Congress may, pursuant to both the Commerce Clause and the Necessary and Proper Clause,[7] enact statutes creating a broad range of federal crimes, Gonzáles v. Raich, — U.S.-, -, 125 S.Ct. 2195, 2216, 162 L.Ed.2d 1 (2005) (Scalia, J., concurring), there must be appropriate facts establishing the federal jurisdictional underpinnings required by the Constitution. United States v. López, 514 U.S. 549, 567, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Such conditions are not present in this case.
The Hobbs Act states that “[wjhoever in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce, by robbery, or extortion, or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section” has committed a federal crime. 18 U.S.C. § 1951(a). Although Congress’ intent in enacting the Hobbs Act was undoubtably “to use all [its] constitutional power ... to punish" interference with interstate commerce by extortion, robbery, or physical force,” Stirone v. United States, 361 U.S. 212, 215, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), this statute must be read in the context of what is allowed to be regulated by the Commerce Clause. The Commerce Clause permits Congress to create federal crimes for offenses “directed at the instru-mentalities, channels or goods involved in interstate commerce.” Morrison, 529 U.S. *15 at 618, 120 S.Ct. 1740. The facts of this case are far removed from these strictures, and no amount of prosecutorial inventiveness or incantation can convince me that interstate commerce is implicated in this case, heinous as the actions of Jiménez and his cohorts may have been.
We are not faced here with the robbery of decedent’s local gas station, which would bring the government closer to the interstate nexus it so vehemently seeks by reason of that business purchasing goods in interstate commerce. Nor is this a case of Jiménez waylaying the decedent on his way to the bank with the proceeds of interstate sales. It is not even a case of the robbers intercepting decedent and forcibly depriving him of the local gas station’s receipts while he was on the way home. Although all of these scenarios would cause me to hesitate as to the impact of such criminal activity on interstate commerce, certainly those examples would be closer to providing the required constitutional jurisdictional nexus that is missing in the present ease. Here, all criminal activity took place in decedent’s home, the’ stolen funds had come to rest in decedent’s kitchen, and there is no evidence that Jim-énez or his cohorts even knew of their existence before decedent’s home was fortuitously picked to be burglarized. See United States v. Min Nan Wang, 222 F.3d 234, 240 (6th Cir.2000) (finding that the Hobbs Act did not encompass the robbery of business proceeds from the home of business owners even though the robber once worked for the business). There was in fact no connection between the perpetrators of the robbery and decedent’s business.
Under the government’s theory of causation, if the decedent had taken the money out of the kitchen hiding place, gone to the supermarket, and been robbed of this money, shot, and killed by a person holding up the supermarket, a Hobbs Act violation could be charged since the original source of those funds was a business in interstate commerce and his business was never able to reopen after the depletion of those funds and the owner’s death. What about the hold up of a neighborhood ice cream truck selling national brand products, in which the driver is killed resisting the robber, as a result of which his estate must file for bankruptcy? Would the government blink at calling that a Hobbs Act violation? At the rate we are going, perhaps the day will come when the federal government will see fit to prosecute the robbery of a child’s roadside lemonade stand because the lemons came from California, the sugar was refined in Philadelphia, and the paper cups were manufactured in China.
I cannot agree that the federal government has the constitutional power to prosecute Jiménez for a violation of the Hobbs Act given the facts proven in this case. See Morrison, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658; López, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626. However, because precedent binds me until such time as the Supreme Court puts an end to the fictions that allow the apparently limitless aggrandizement of federal power into areas reserved to the states by the Constitution, I have no choice but to concur in the affirmance of Jiménez’s conviction.

. See United States v. Rodriguez-Casiano, 425 F.3d 12, 15 (1st Cir.2005) (finding the robbery of business proceeds from the home of a business owner to be a sufficient nexus with interstate commerce under the Hobbs Act); United States v. Nguyen, 246 F.3d 52, 54-55 (1st Cir.2001) (same).

. Although, as applied to the facts of this case, this interpretation also extends the Hobbs Act beyond Congress’ intention, this issue was not raised on appeal. See United States v. Miles, 122 F.3d 235, 243-45 (5th Cir.1997) (DeMoss, J., specially concurring).

. U.S. Const, art. I, § 8 ("The Congress shall have power to ... regulate commerce with foreign nations, and among the several states” and to "make all laws which shall be necessary and proper for carrying into execution the foregoing powers.”).