**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2163
_____

UNITED STATES OF AMERICA

v.

TAHN LE, a/k/a LEE, a/k/a TAHN LEE

Tahn Le,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.:  2-11-cr-00104-4)
District Judge:  Honorable Legrome D. Davis

_____

Submitted under Third Circuit LAR 34.1(a)
on September 9, 2013

(Opinion filed:  October 23, 2013)

Before:  RENDELL, JORDAN, and GREENAWAY, JR., Circuit Judges
_____

O P I N I O N
_____

**RENDELL**, Circuit Judge:

Appellant Tahn Le was convicted by a jury of multiple counts arising out of a

series of armed robberies in four private homes located in Pennsylvania, New Jersey and

Virginia. Le's appointed appellate counsel has moved for permission to withdraw under *Anders v. California*, 386 U.S. 738 (1967), on the ground that Le has no non-frivolous arguments on appeal. We will grant the motion to withdraw and affirm Le's sentence.

## I. Background[1]

Because we write primarily for the parties, we set forth only those facts and procedural history relevant to our conclusion.

### 1. The Bartonsville Robbery

On the evening of January 26, 2010, Le, along with co-conspirators Thach Van Nguyen, Teo Van Bui, Buu Huu Truong, and Den Van Nguyen, committed an armed home invasion at the home of Steve Tran. The planning for the robbery took place at a pool hall in Philadelphia. Thach Van Nguyen had previously worked for Tran, the owner of multiple profitable nail salons, and suggested that Tran may keep money from his businesses in his home. On the night of the robbery, the men drove from Philadelphia to Tran's home in Bartonsville, Pennsylvania. When Tran arrived home, Truong, Den Van Nguyen, Bui and Le entered the home and pushed Tran to the floor. Wearing masks and gloves and brandishing firearms, they informed Tran that they would kill him if he refused to tell them where his valuables were hidden. The men stole between $7,000 and $8,000 in cash, some of which represented proceeds from the nail salons, along with other property.

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C.§ 1291.

2.      The Freehold Robbery

On January 29, 2010, Buu Huu Truong, Thach Van Nguyen, and Thanh Le met in Philadelphia and drove to Freehold, New Jersey to rob the home of Tessa Tran and Thanh Nguyen.  Again, the home was targeted because Thach Van Nguyen had previously worked at a nail salon owned by the victims and believed that they kept business proceeds in their home.  After obtaining entry into the home, Truong threatened Tessa Tran with a firearm and tied her up.  Truong and Le then robbed Tran of approximately $2,000 in cash representing proceeds from her business, along with other valuables.

3.      The Monroe Township Robbery

Shortly after the Freehold robbery, Thach Van Nguyen, Buu Huu Truong, Le, and Le's girlfriend Denise Novelli met at the Philadelphia pool hall and discussed plans to rob the owner of another nail salon where Thach Van Nguyen had worked in Monroe Township, New Jersey.  Again, Van Nguyen believed that the owner, Kelly Hang, kept cash from her business in her home.  On February 24, 2010, the four drove to the home.  After forcing their way in, Truong assaulted Hang's babysitter and Truong and Le tied her up.  The men then stole approximately $60,000 in proceeds from the nail salon, along with over $30,000 in jewelry and other property.

4.      The Falls Church Robbery

Sometime in 2009 or 2010, Le met and became friendly with Hung T. Ngo.  Ngo worked at a seafood restaurant, Jesse Taylor Seafood, in Washington, DC, and disliked a female co-worker.  Believing that the woman had an ownership interest in the restaurant and kept business proceeds in her home, Le, Novelli and Ngo planned to rob her.  In

3

planning the robbery, Le followed the woman from the restaurant to her Falls Church, Virginia home on several occasions. On April 30, 2010, Novelli persuaded the intended victim's son, Tai Xuan Le, to open the door to the home, at which point Than Le forced his way into the home. Tahn Le beat Tai Xuan Le in the head with a gun and left him bleeding on the floor. Believing Tai Xuan Le's sister to be home but unable to find her, Tahn Le and Novelli left the home empty-handed. Tai Xuan Le required hospitalization to treat his extensive head wounds.

On February 23, 2011, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Le, Thach Van Nguyen, Buu Huu Truong, and Den Van Nguyen with conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a), Hobbs Act robbery, 18 U.S.C. § 1951(a), possession of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c), and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). On November 16, 2011, Le and his co-defendants were charged with the same offenses in a superseding indictment.[2] Between August 27, 2012, and October 3, 2012, each of Le's co-defendants pled guilty.

On January 4, 2012, Le, through counsel, filed a motion to dismiss the indictment on speedy trial grounds, which was denied by the District Court on January 6, 2012. On January 6, 2012, the Government filed a motion to admit tape recordings of a conversation that took place between Le and co-conspirator Denise Novelli while Le was

---

[2] The only change between the initial and superseding indictments was the addition of two defendants, Denise Novelli and Sidney Biggs, as co-conspirators in the Hobbs Act conspiracy claim.

4

incarcerated awaiting trial. Le did not file an opposition to the Government's motion, and the District Court granted the motion on January 16, 2012.

Le's trial began on January 17, 2012. Co-defendants Buu Huu Truong, Thach Van Nguyen, Den Van Nguyen, Teo Van Bui, Hung T. Ngo, and Denise Novelli all testified regarding Le's participation in the crimes. On January 20, 2012, after a four-day trial, a jury found Le guilty on all four counts.[3] On April 23, 2012, Le, through his trial counsel, filed a timely notice of appeal. On May 14, 2012, Le submitted a letter to the District Court, which the Court construed as a motion for appointment of new counsel. In response, Le's trial counsel filed a motion to withdraw as court appointed counsel, which the District Court granted on May 31, 2012. On August 21, 2012, the District Court issued an Order appointing Michael J. Kelly, Esq. as CJA counsel to represent Le on appeal.

On February 22, 2013, Kelly filed a brief pursuant to *Anders v. California*, *supra*, and a Motion to Withdraw Representation. In the *Anders* brief, counsel identified three issues which potentially could have given rise to grounds for appellate relief: (1) whether the evidence was sufficient to establish that the conspiracy to commit Hobbs Act robbery

---

[3] On April 23, 2012, the District Court sentenced Le as follows: (1) on the Hobbs Act conspiracy and robbery charges (counts one and two), Le received 240 months, to be served concurrently, three years supervised release, and restitution in the amount of $112,689.55; (2) on the charge of possession of a firearm during and in relation to a crime of violence (count three), Le received 84 months, to be served consecutively to counts one, two and seven, and five years supervised release; and (3) on the charge of possession of a firearm by a convicted felon (count seven), Le received 316 months, to be served concurrently with counts one and two, and five years supervised release. Le's total sentence amounted to 400 months in prison and ten years supervised release. Le was not charged in counts four, five or six of the indictment, which involved other defendants.

and Hobbs Act robbery affected interstate commerce; (2) whether the evidence was sufficient to demonstrate that Le had possession of a firearm during the Bartonsville robbery; and (3) whether the District Court committed procedural error by granting the Government's request for application of a sentencing enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.

Le filed a *pro se* brief on April 8, 2013, in which he raised three additional issues: (1) whether the District Court erred in admitting a tape recorded conversation between Le and co-conspirator Denise Novelli; (2) whether the evidence adduced at trial was sufficient to support his convictions; and (3) whether the ten-and-a-half month period between his arraignment and commencement of trial violated his right to a speedy trial under the Sixth Amendment and/or the Speedy Trial Act, 18 U.S.C. § 3161.

## II. Standard

Third Circuit Local Appellate Rule 109.2(a) provides that, "[w]here, upon review of the district court record, counsel is persuaded that the appeal presents no issue of even arguable merit, counsel may file a motion to withdraw and supporting brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), . . . ." If the Court "agrees that the appeal is without merit, it will grant counsel's *Anders* motion, and dispose of the appeal without appointing new counsel." *Id*. "The Court's inquiry when counsel submits an *Anders* brief is thus twofold: (1) whether counsel adequately fulfilled the rule's requirements; and (2) whether an independent review of the record presents any nonfrivolous issues." *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001). In preparing an *Anders* brief, counsel should "(1) [] satisfy the court that counsel has thoroughly examined the record

6

in search of appealable issues, and (2) [] explain why the issues are frivolous." *Id.* "Counsel need not raise and reject every possible claim. However, at a minimum, he or she must meet the 'conscientious examination' standard set forth in *Anders*." *Id.*

### III. Discussion

A. Issues Identified in the *Anders* Motion

      1.      Whether the Government Established a Sufficient Nexus to Interstate Commerce to Convict Le of Conspiracy to Commit Hobbs Act Robbery and Hobbs Act Robbery

            a. Hobbs Act Robbery

To prove that a defendant committed Hobbs Act robbery, the government must prove "beyond a reasonable doubt that (1) the defendant knowingly or willfully committed . . . robbery or extortion, and (2) the defendant's conduct affected interstate commerce." *United States v. Powell*, 693 F.3d 398, 401 (3d Cir. 2012). In reviewing challenges to the sufficiency of the evidence supporting conviction, we apply a "particularly deferential standard of review." *Id.* at 401 n.6. "We view all evidence in the light most favorable to the government, and sustain conviction as long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal citations and quotation marks omitted).

Though the Government's evidence demonstrated that Le was involved in four different robberies, he was charged with Hobbs Act robbery only for the Bartonsville robbery. As noted *supra*, the Government introduced extensive testimony from Le's co-defendants regarding Le's participation in the Bartonsville robbery. Accordingly, the issue identified in counsel's *Anders* motion was not whether the evidence was sufficient

7

to show that Le participated in the robbery, but whether the Government proved beyond a reasonable doubt that the robbery had an effect on interstate commerce.

The record demonstrates that the Government's evidence was sufficient on this point. We recently held, in a case factually similar to this one, that where the evidence establishes that a defendant has targeted a residence in order to rob the home of proceeds from a business that engages in interstate commerce, the jurisdictional element of Hobbs Act robbery is satisfied. In *United States v. Powell*, *supra*, defendant and his accomplices targeted business owners by following them from their businesses to their homes in order to rob them of business proceeds. *Id*. at 399. They specifically targeted Asian-owned businesses on the belief that the owners of such establishments did not use banks. *Id*. Evidence showed that the business establishments they targeted sold merchandise from out-of-state suppliers, and therefore, were engaged in interstate commerce. *Id* at 399-400. The defendant moved to dismiss the indictment for insufficient evidence to demonstrate an effect on interstate commerce, arguing that the robbery of a private residence, rather than a place of business, did not satisfy the Hobbs Act's requirement that the robbery must affect interstate commerce. *Id*. at 400, 402. We rejected the defendant's arguments, joining several of our sister circuits in holding that where a defendant targets a home for the purpose of stealing proceeds from a business that engages in interstate commerce, "such targeting satisfies the Hobbs Act's jurisdictional nexus." *Id*. at 403. *See also United States v. Le*, 256 F.3d 1229, 1237 n.8 (11th Cir. 2001) ("Our conclusion that Le's actions implicated interstate commerce to a degree sufficient to create jurisdiction under the Hobbs Act is based on the fact that Le

8

specifically targeted business assets that were temporarily kept at a private residence which, if stolen, had the potential to delay or obstruct the purchase of products from another state . . . ."); *United States v. Nguyen*, 246 F.3d 52, 54 (1st Cir. 2001).

Multiple witnesses testified that defendants chose to rob the house in Bartonsville on the belief that Mr. Tran, the homeowner, kept proceeds from his nail salon business in the home. In addition, the Government introduced evidence that Mr. Tran's nail salons were engaged in interstate commerce. Mr. Tran testified that he purchased supplies for his nail salons from a supplier in California via UPS shipments. Finally, the evidence indicated that at least some of the money stolen represented proceeds from the victim's nail salons. The Hobbs Act's jurisdictional nexus was clearly satisfied here.

### b. Conspiracy to Commit Hobbs Act Robbery

The evidence adduced at trial was similarly sufficient to prove beyond a reasonable doubt that Le was guilty of conspiracy to commit Hobbs Act robbery. The Government introduced evidence that Le conspired with six other defendants to commit four robberies between January 2010 and April 2012. In addition to the Bartonsville robbery described *supra*, Le's co-defendants testified regarding Le's participation in the planning and execution of home invasion robberies in Freehold, New Jersey, Monroe Township, New Jersey, and Falls Church, Virginia. Again, the Government's evidence demonstrated that each of the homes was targeted for robbery because the co-conspirators, including Le, believed that the homes were occupied by business owners who kept proceeds from their businesses in their homes.

Moreover, the evidence demonstrated that the targeted proceeds came from businesses that engaged in interstate commerce. The co-owner of the salon targeted in the Freehold robbery testified that she drove once a week to Philadelphia to purchase supplies for the salon, which served customers from neighboring states. Similarly, the owner of the salon targeted in the Monroe Township robbery testified that she purchased supplies for her New Jersey nail salon every two or three weeks from a store in Philadelphia.

The Falls Church robbery warrants a separate discussion. As with the other robberies, Le and his co-defendants believed they were robbing the home of a business owner who kept proceeds from the business—a Washington, DC seafood restaurant—in her home. The evidence demonstrated that the woman did not in fact own the business, but merely worked there as a cashier. Accordingly, the object of the conspiracy, Hobbs Act robbery, was thwarted. Indeed, in the absence of facts indicating that business proceeds were in the cashier's home, it was an impossibility.[4] Such fact does not, however, undermine Le's conviction for conspiracy to commit Hobbs Act robbery, as "legal impossibility is not a defense to conspiracy." *United States v. Hsu*, 155 F.3d 189, 203, 204 (3d Cir. 1998); *see also United States v. Olgin*, 745 F.2d 263, 273 (3d Cir. 1984)

---

[4] Counsel did not identify the impossibility argument with respect to the Falls Church robbery as a non-frivolous issue in its *Anders* brief. We mention the issue here because the Government noted it in its trial brief as a possible attack on the sufficiency of the evidence of conspiracy to commit Hobbs Act robbery. Counsel's failure to raise this issue in the *Anders* brief as a possible nonfrivolous issue does not undermine the adequacy of the brief, however, as it is well settled in this Circuit that impossibility is not a defense to conspiracy; accordingly, a challenge on this ground would have been frivolous.

("[T]he objective impossibility of attaining the goals of a conspiracy is irrelevant to the guilt of those who conspire.").

The more difficult question is whether the record contains sufficient evidence to find that the seafood restaurant in question, Jessie Taylor Seafood, was engaged in interstate commerce. The *Anders* brief acknowledges that no direct evidence was presented regarding the restaurant's interstate commerce activities. Rather, the brief argues that engagement in interstate commerce may be inferred under the circumstances because it is "inconceivable that a seafood business could operate in a landlocked location such as Washington, D.C. without having inventory from out-of-state."

In *United States v. Needham*, 604 F.3d 673 (2d Cir. 2010), the Court of Appeals for the Second Circuit reversed certain of the defendants' convictions for Hobbs Act robbery, where defendants targeted marijuana proceeds, due to the government's failure to introduce evidence of an interstate effect. The court pointed out that it was possible for marijuana to be grown, processed and sold entirely within the state of New York; accordingly, no interstate effect could be inferred absent evidence of such connection. *Id.* at 681. The court affirmed the defendants' convictions for conspiracy to commit Hobbs Act robbery, however, where the targeted proceeds were from the sale of cocaine and heroin, stating that because such drugs "cannot be produced in New York, and thus necessarily travel in interstate commerce," such connection could be inferred. *Id.* at 680.

Moreover, the *Needham* court pointed out that the robberies targeting marijuana and the robberies targeting cocaine and heroin were all planned as part of a single conspiracy. *See id.* at 680 ("The indictment charged—and the jury found—a single

11

Hobbs Act conspiracy in which each of the defendants participated. . . . Thus, if the overall conspiracy targeted products moving in interstate commerce, as the cocaine and heroin robberies suggest, all three defendants are liable."). Thus, given the inference that could be drawn here regarding the restaurant's engagement in interstate commerce and the fact that, as in *Needham*, the indictment charged one overall conspiracy in which the defendants, including Le, conspired and agreed to commit armed robberies targeting the proceeds of businesses that engaged in interstate commerce, the Government's failure to demonstrate an interstate connection for one of the targeted businesses does not undermine Le's conviction for the overall conspiracy.[5]

In sum, we agree with counsel that any argument that Le could not be convicted of Hobbs Act robbery or conspiracy to commit Hobbs Act robbery due to a lack of connection to interstate commerce would be frivolous.

2.      Whether there was Sufficient Evidence for the Jury to Find that Le had Constructive or Actual Possession of a Firearm

The second issue identified by counsel in its *Anders* brief is whether there was sufficient evidence for a rational trier of fact to convict Le of possession of a firearm in

---

[5] The *Anders* brief raises one additional issue with respect to the Falls Church robbery. For each of the other robberies, venue was appropriate in the Eastern District of Pennsylvania because testimony indicated that the planning for each took part at a pool hall in Philadelphia. There was no testimony, however, indicating that planning for the Falls Church robbery took place in Philadelphia; indeed, the evidence indicates that such planning occurred in Washington, DC. However, the *Anders* brief correctly notes that absence of grounds for venue is waived where defendants fail to timely object. *United States v. Perez*, 280 F.3d 318, 328 (3d Cir. 2002). And in any case, we believe that venue was proper in the Eastern District of Pennsylvania because, as described *supra*, the planning for the Falls Church robbery was part of a single overall conspiracy, and much of the planning in connection with that conspiracy took place in the Eastern District of Pennsylvania.

relation to a crime of violence, 18 U.S.C. § 924(c), and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g). Like the Hobbs Act robbery charge, these charges relate only to the Bartonsville, Pennsylvania robbery, and not to the robberies committed outside Pennsylvania. There can be no question that the evidence was sufficient to establish that the Bartonsville robbery was a crime of violence, or that at the time of the robbery Le was a convicted felon. Thus, the issue raised in the *Anders* brief is whether the evidence was sufficient to establish possession of a firearm by Le.

Section 924(c) applies to "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." Similarly, § 922(g) makes it unlawful for any person who has been convicted of a felony "to . . . possess in or affecting commerce, any firearm or ammunition . . . ." Co-defendants Buu Huu Truong and Teo Van Bui each testified that they carried a firearm during the Bartonsville robbery. Truong testified that he handed his gun to Le while he broke into the home. He testified that at some point during the robbery he took the gun back from Le, and used it to strike the victim before returning the gun to Le. Both Thach Van Nguyen and Truong testified that Le stated that he threw a gun away in the house, and Den Van Nguyen testified that he witnessed Le throw a gun in the house. Police recovered two firearms from the house. The credibility of these witnesses was for the jury to decide. *See United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009) ("In reviewing a sufficiency-of-the-evidence claim, . . . we must examine the totality of the evidence, both direct and circumstantial, and interpret the evidence in the light most favorable to the government as the verdict winner.") (internal quotation marks

13

omitted). We agree the evidence is sufficient for a rational trier of fact conclude that Le possessed a weapon during the Bartonsville robbery, and that any argument to the contrary would be frivolous.

        3.      Whether the District Court Committed Procedural Error by Applying a Sentencing Enhancement for Obstruction of Justice

The third issue identified by counsel's *Anders* brief is whether the District Court erred in applying a two-step enhancement for obstruction of justice under U.S.S.G. § 3C1.1, based on Le's recorded statements to Denise Novelli.[6] In the recorded conversation, Le urged Novelli, among other things, to tell the FBI she had never gone with Le to any other states, when in fact she had traveled with him to robberies in both New Jersey and Virginia, and to tell the FBI she knew nothing about a gun. Le also challenges the District Court's application of the enhancement in his *pro se* brief.

The presentence investigator did not recommend applying the two-level enhancement to Le, opining that Le's motivation in encouraging Novelli to lie was to protect her, rather than to impede his own prosecution. The Government objected, and the District Court, after hearing argument on the issue, decided to apply the enhancement, stating that, though Le may have had several motivations to encourage Novelli to lie, one motivation was his own self-interest in avoiding prosecution.

---

[6] Section 3C1.1 provides that "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any related conduct; or (B) a closely related offense, increase the offense level by 2 levels."

14

Because the appropriateness of the enhancement depends on the factual issue of Le's motivation, we review the District Court's application of the enhancement for abuse of discretion. *See United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008) ("[T]he District Court will have abused its discretion in imposing a sentence if it based its Guidelines calculation on clearly erroneous facts."). In this case, the District Court listened to the recording at issue on multiple occasions and heard argument from both the Government and Le regarding Le's motives in urging Novelli to lie. The court concluded that Le was motivated, at least in part, by a desire to impede his own prosecution. We agree with counsel that it would be frivolous to argue that the District Court's decision to apply the enhancement was an abuse of discretion.

B.     Additional Issues Identified in Appellant's *Pro Se* Motion

Having concluded that counsel has "thoroughly examined the record in search of appealable issues, and [] explain[ed] why the issues are frivolous," we may appropriately conclude our inquiry. *Youla*, 241 F.3d at 300, 301 ("Where the *Anders* brief initially appears adequate on its face, the proper course 'is for the appellate court to be guided in reviewing the record by the *Anders* brief itself.'") (quoting *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996)). However, we briefly address the additional issues advanced by Le in his *pro se* brief.[7] *See Youla*, 241 F.3d at 301-02 (examining issues addressed in defendant's *pro se* brief that were not addressed in counsel's *Anders* brief).

---

[7] One issue raised in Le's *pro se* brief is "[w]hether the sentence imposed by the district court was procedurally and substantially reasonable." The only aspect of the sentence Le appears to challenge, however, is the two-level enhancement applied under U.S.S.G. § 3C1.1. That issue is discussed *supra*, and we do not repeat our analysis here.

15

1. **Whether the District Court Erred in Admitting Tape Recorded Statements Made by Le to a Co-Conspirator**

As noted above, at trial, the Government introduced a tape recorded conversation that took place between Le and his ex-girlfriend, co-conspirator Denise Novelli. During this conversation, Le made several statements that could be interpreted as incriminating. The Government filed a pretrial motion to have the tape admitted into evidence, and Le failed to oppose this motion. The District Court granted the Government's motion. Le now objects to the admission of the tape recording on authenticity grounds, and on the ground that the recording was "prejudicial." Because Le failed to oppose the Government's motion to admit the recording at trial, he cannot successfully challenge the ruling on appeal unless it was plain error. *See United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). "[T]he plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

Fed. R. Evid. 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." One way of satisfying this requirement is to have a witness with knowledge testify "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). In its motion to admit the tape recording, the Government noted that one of the participants to the conversation, Denise Novelli, would be available to testify that the recording was an accurate reproduction of the conversation

16

she had with Le.  Indeed, Novelli did testify at trial as to the accuracy of the recording.

We agree that the Government met its burden regarding authentication of the tape

recording.[8]

Le further argues that the recording should not have been admitted because it was

"prejudicial."  Le does not, however, explain how the recording was *unfairly* prejudicial,

*i.e.*, that it was so inflammatory as to inhibit the jury's neutral application of the law to

the facts. *See Starnes*, 583 F.3d at 215.  We have reviewed the transcript of the recording

and do not believe it may reasonably be characterized as unfairly prejudicial.

2.      Whether Sufficient Evidence Existed to Support the Convictions

Le argues generally that his convictions were unsupported by the evidence.  He

appears to base this argument on the lack of physical evidence connecting him to the

crimes, and on the Government's reliance on testimony from cooperating co-defendants.[9]

Le's argument must fail.  The testimony of co-conspirators is, by itself, sufficient to

sustain a conviction if the jury finds such testimony to be credible.  *See United States v.*

*De Larosa*, 450 F.2d 1057, 1060 (3d Cir. 1971) ("In view of the frequent absence of

proof of crime other than the account of a participant, a jury should be permitted as a

---

[8] In his *pro se* motion, Le states that the District Court should have conducted a *Starks* hearing to determine whether the recording should have been admitted.  *See United States v. Starks*, 515 F.2d 112 (3d Cir. 1975).  It is unclear whether *Starks* remains relevant after the enactment of Fed. R. Evid. 901.  In any case, the Government averred in its pretrial motion that each of the *Starks* factors was met.  Le failed to oppose the Government's motion; as a result, he waived his right to a *Starks* hearing.

[9] Le also asserts that, absent the tape recording between himself and Novelli, the jury would not have been able to find beyond a reasonable doubt that he was involved in the crimes.  Because we believe the tape recording was properly admitted, we need not address this argument.

general rule to convict when persuaded of the credibility of the testimony of an accomplice."); *see also United States v. Hernandez*, 962 F.2d 1152, 1157 (5th Cir. 1992) ("There is no requirement that testimony by a co-conspirator fulfilling a plea bargain be corroborated by independent evidence. The jury is entrusted with the responsibility of evaluating the witness's credibility, and uncorroborated testimony of a co-conspirator will sustain a guilty verdict unless, as is not the case here, the testimony is incredible or otherwise insubstantial on its face."). Six of Le's co-conspirators testified as to Le's planning of and participation in the four robberies at issue. It would be frivolous to argue that a conviction could not be sustained on the basis of such cumulative evidence.

3.      Whether Appellant was Denied the Right to a Speedy Trial

Lastly, Le argues that his indictment should have been dismissed because his rights to a speedy trial were violated. The Speedy Trial Act generally requires that a defendant's trial begin no more than 70 days after the initial appearance. *See generally* 18 U.S.C. § 3161. However, the statute specifically excludes from that time calculation "[a]ny period of delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In addition, the statute excludes any "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). *See also United States v. Arbelaez*, 7 F.3d 344,

18

347 (3d Cir. 1993) ("[A]fter defendants are joined for trial, an exclusion applicable to one defendant applies to all codefendants.") (internal quotation marks omitted).

Le made his initial appearance on March 1, 2011. On March 11, 2011, the District Court scheduled the trial to commence on May 2, 2011. Between April 18, 2011 and April 26, 2011, various of Le's co-defendants filed motions to continue the trial, citing the need for additional time to prepare and time to determine whether non-trial disposition was possible. On April 25, 2011, the Government filed its own motion to continue, explaining that it had been advised the previous week that the State Police laboratory had recovered DNA evidence from the scene of one of the robberies and needed additional time to compare the DNA recovered to that of the defendants. The District Court, finding that the requirements of § 3161(h)(7)(A) were met, granted each of these motions and ordered that a new trial date be set in the future. On October 26, 2011, the District Court scheduled the trial for January 17, 2012. Because each of the delays between April 2011 and the date his trial commenced in January 2012 were due to specific statutory exceptions to the Speedy Trial Act, Le's argument that his indictment should have been dismissed is frivolous.

## IV. Conclusion

For the reasons stated above, we will grant counsel's motion to withdraw and affirm the Order of the District Court. Counsel is also relieved of any obligation to file a petition for writ of certiorari in the Supreme Court. *See* 3d Cir. L.A.R. 109.2(b).

19