B.D. PARKER. JR., Circuit Judge:
Defendants-appellants Derrilyn Need-ham, Javier Robles, and Corey Thompson appeal from judgments of conviction in the United States District Court for the Southern District of New York (Lynch, J.) for Hobbs Act robbery and related offenses. See 18 U.S.C. §§ 1951, 1952. They challenge their convictions based on an instruction that foreclosed the jury’s consideration of an essential jurisdictional element of Hobbs Act robbery: whether the robberies, which targeted the proceeds of drug trafficking, affected interstate commerce.
This case presents a situation that is highly unlikely to recur, as it arises from Hobbs Act convictions obtained while the law of this Circuit was in flux. After defendants’ trial, our Court held in United States v. Parkes, 497 F.3d 220 (2d Cir.2007), that the jurisdictional element of the Hobbs Act must be found by a jury beyond a reasonable doubt, even where the underlying robbery involved illegal narcotics. Under this supervening rule, the district court’s jury instructions were erroneous. But this error affects only those counts of conviction for which we are unable to identify evidence in the record satisfying the interstate element beyond a reasonable *676 doubt. Cf Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Accordingly, we find that the interstate element was proven with respect to the defendants’ conspiracy convictions, which encompassed cocaine and heroin robberies — substances that necessarily originate out-of-state. We cannot conclude the same, however, for the defendants’ substantive robbery convictions. These individual robberies involved only the proceeds of marijuana trafficking, a drug that may be grown, processed, and sold entirely within New York. Because the government presented the jury with no evidence that the marijuana robberies at issue here affected interstate commerce in any fashion, these convictions cannot be sustained. Consequently, we vacate defendants’ convictions for Hobbs Act robbery, as well as Needham’s conviction for attempted Hobbs Act robbery.
The dissent contends, in effect, that every robbery involving marijuana satisfies the Hobbs Act’s jurisdictional element as a matter of law. We rejected that proposition in Parkes itself.[1] Yet our colleague’s reasoning would reinstate this presumption, in the face of clear precedent to the contrary, by effectively putting words in the jury’s mouth. In this effort, the dissent draws a false equivalence between Congress’s broad power to regulate activities affecting interstate commerce, and the specific jury finding that a particular offense affected interstate commerce, which is required by the Hobbs Act. In so doing, our colleague would turn nearly every robbery into a federal offense. While the dissent concedes that its approach would transform the jury right into a mere “formalism,” we believe that the government must prove an effect on interstate commerce, however slight, in every Hobbs Act prosecution. Absent proof beyond a reasonable doubt, this Court cannot substitute its own speculation for the jury finding required by our precedent.
We emphasize that with the law firmly established after Parkes, 497 F.3d 220, district courts have clear guidance about how they should instruct juries in Hobbs Act prosecutions going forward, and the situation presented here is unlikely to recur. Nonetheless, in this case the government did not offer any proof that would demonstrate an interstate nexus, however slight or subtle, for the marijuana robberies. As a result, the defendants’ robbery convictions must be reversed. The district court’s judgments are affirmed in all other respects.[2]
1. BACKGROUND
The appellants were prosecuted for their roles in a series of violent robberies targeting narcotics dealers in the New York City area. They belonged to a conspiracy involving approximately ten individuals who, in various combinations, committed more than a dozen robberies and attempted robberies over a two-year period. These robberies ordinarily involved home invasions of suspected drug dealers in which the participants, acting on inside information, gained entry by impersonating police officers and then robbed the inhabitants of drugs and the proceeds of drug sales. In addition to the conspiracy charge, the indictment contained substantive counts charging the appellants for the various roles they played in several of the underlying robberies. Ultimately, the jury *677 convicted the defendants of three of the robberies and conspiracy to commit Hobbs Act robbery. It acquitted the appellants and a fourth defendant, Luis Sanchez, on a variety of additional charges ranging from Hobbs Act robbery to firearms possession.
Defendants Needham and Robles were convicted for a December 13, 2001 robbery at 4434 Baychester Avenue in Bronx, New York. The trial testimony showed that Robles helped to organize the robbery, offering his house as a staging location and supplying four other co-conspirators with guns, police badges, bullet-proof vests, and a police scanner. Needham provided information as to the location of drug proceeds in the house, though she did not participate in the robbery itself. Pretending to be police officers, the crew gained access to the house, subdued the occupants at gunpoint, searched the premises, and ultimately left with a bag containing $600,000 from marijuana sales.
Needham was also convicted of an attempted robbery at 22 Short Street in Mount Vernon, New York, in late 2003. There, she provided information about a marijuana dealer operating out of the location, including details about how to get inside and who to expect there. Two of her counterparts, again equipped with police weapons, badges, and vests, gained entry and handcuffed one of the occupants before searching the apartment. Finding no drugs or money, however, the crew left the scene empty-handed. Importantly, no testimony in the record indicated what amount of drugs or money the robbery crew expected to take from the premises.
Finally, Thompson was convicted of a robbery at 2615 Grand Concourse in Bronx, New York, committed in December 2003. Neither Needham nor Robles were implicated in this robbery, however several other members of the same crew participated and Thompson provided inside information about the marijuana dealing conducted from the targeted address. After knocking at the door, the four armed men stormed in and questioned a female occupant at gunpoint. Ultimately, they stole $15,000 to $30,000 found in a shoe box in one of the bedrooms.[3] This appeal followed.
II. DISCUSSION
Offenses under the Hobbs Act require the government to prove, as an element, that a defendant’s conduct affected interstate commerce. See 18 U.S.C. § 1951; United, States v. Wilkerson, 361 F.3d 717, 726 (2d Cir.2004) (“In a Hobbs Act prosecution, proof that commerce was affected is critical since the Federal Government’s jurisdiction of this crime rests only on that interference.”) (internal quotation marks and alterations omitted). While this interstate effect may be “very *678 slight,” it must be proven to the jury beyond a reasonable doubt. United States v. Angelilli, 660 F.2d 23, 35 (2d Cir.1981); see United States v. Parkes, 497 F.3d 220, 226-27 (2d Cir.2007). At the time of trial, the law of this circuit presumed that all drug trafficking activity had an effect on interstate commerce sufficient to meet the jurisdictional requirements of the Hobbs Act. See United States v. Fabian, 312 F.3d 550, 555 (2d Cir.2002). Accordingly, the district court instructed the jury, consistent with the law at the time, that:
Under the law, all illegal drug activity, even if it is purely local in nature, has an effect on interstate commerce. Therefore, if you find that the object of the robbery at issue was to obtain illegal drugs or money earned from the sale of illegal drugs, this element is satisfied.
The law, however, has since changed. Proof of drug trafficking is no longer regarded as automatically affecting interstate commerce; instead, even in drug cases, the jury must find such an effect as part of its verdict. See Parkes, 497 F.3d at 229-30; United States v. Gomez, 580 F.3d 94, 100 (2d Cir.2009). The appellants correctly contend that the jury never had an opportunity to make this crucial jurisdictional finding because of the district court’s instructions.
A. Standard of Review
Normally, we would review the failure to charge an element of a crime for harmless error. See Neder v. United States, 527 U.S. 1, 9-10, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (applying harmless-error analysis where an element of the offense was withheld from the jury over defendant’s objection); Monsanto v. United States, 348 F.3d 345, 349-51 (2d Cir.2003). But where, as in this case, a defendant has failed to timely object, we generally review for plain error. This analysis requires “(1) error, (2) that is plain, and (3) that affects the defendant’s substantial rights. If all three conditions are met, we may exercise our discretion to notice the error, provided that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.” United States v. Carter, 489 F.3d 528, 537 (2d Cir.2007) (internal citation omitted).
In a further twist, however, we have traditionally applied a “modified” plain error analysis in cases “where, as here, the source of plain error is a supervening decision.” United States v. Henry, 325 F.3d 93, 100 (2d Cir.2003) (internal quotation marks omitted). In these instances, the government, not the defendant, “bears the burden to demonstrate that the error ... was harmless.” Id. (internal quotation marks omitted). Yet, as a number of panels have noted, it is unclear whether this standard remains in force following the Supreme Court’s decision in Johnson v. United States, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), which applied a plain error standard despite a supervening change in law. Nonetheless, these panels have often found it unnecessary to squarely address the issue, because it did not affect the outcome, and we reach the same conclusion here. See, e.g., United States v. Lee, 549 F.3d 84, 89 n. 2 (2d Cir.2008); United States v. Thomas, 274 F.3d 655, 668 (2d Cir.2001). The Court need not resolve this open question because, whether plain error or some modified approach is applied, our conclusions would be the same.
In determining whether error occurred, this Court examines the jury instructions based on “the law existing at the time of the appeal.” See United States v. Ballistrea, 101 F.3d 827, 835 (2d Cir.1996). Thus, while the district court’s instructions were consistent with the law of this circuit *679 at the time, they are measured here against the current state of our law.
B. Analysis
Since the defendants’ trial, we have rejected the view that an interstate effect can be presumed wherever the object of a robbery was to obtain illegal drugs or drug proceeds. Instead, we have held that this element must be found by a jury beyond a reasonable doubt, even where the robbery targets a drug trafficking operation. See Parkes, 497 F.3d at 230. More recently, in United States v. Gomez, 580 F.3d 94 (2d Cir.2009), we again recognized that the interstate element of Hobbs Act robbery requires a jury finding, and that this element cannot be presumed in narcotics robberies. See id. at 100 (identifying error in instructions’ reference to congressional findings, which may have misled the jury into believing that those findings were binding upon it as a trier of fact).
In this case, the interstate instruction provided by the district court foreclosed any jury determination on the jurisdictional element. The district court charged the jury, and later repeated in a post-trial order, that if the object of the robbery “was to obtain illegal drugs or money earnings from the sale of illegal drugs,” the interstate element was established as a matter of law. Under our intervening decisions in Parkes and Gomez, this instruction improperly supplanted the required jury finding.
The remaining question, then, is whether this error affected substantial rights. “An error affects a defendant’s substantial rights if it is prejudicial and it affected the outcome of the district court proceedings.” United States v. Thomas, 274 F.3d 655, 668 (2d Cir.2001) (internal quotation marks omitted). Because the instruction in question involved an element on which federal jurisdiction depends, we conclude that it had the potential to affect the district court proceedings. Without an interstate nexus, the district court would have been deprived of criminal jurisdiction over these offenses altogether. See United States v. Arena, 180 F.3d 380, 389 (2d Cir.1999); United States v. Leslie, 103 F.3d 1093, 1103 (2d Cir.1997) (“There is nothing more crucial, yet so strikingly obvious, as the need to prove the jurisdictional element of a crime.”). Only this “jurisdictional nexus transforms the quintessential state crimes of robbery and extortion into federal crimes.” United States v. Perrotta, 313 F.3d 33, 37 (2d Cir.2002).
The ultimate issue in this case, then, is whether the error was prejudicial. See Gomez, 580 F.3d at 102 (concluding that instruction was not prejudicial even if given in error); cf. Neder v. United States, 527 U.S. 1, 10, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (applying harmless-error analysis). In United States v. Jackson, 196 F.3d 383, 386-87 (2d Cir.1999), we interpreted the Supreme Court’s decision in Neder, describing the analysis a reviewing court must undertake to determine whether the omission of an element was harmless. In so doing, we held that “if the evidence supporting the omitted element was controverted, harmless error analysis requires the appellate court to conduct a two-part inquiry, searching the record in order to determine (a) whether there was sufficient evidence to permit a jury to find in favor of the defendant on the omitted element, and, if there was, (b) whether the jury would nonetheless have returned the same verdict of guilty.” Jackson, 196 F.3d at 386. But see Monsanto v. United States, 348 F.3d 345, 350 (2d Cir.2003) (expressing concern that Jackson is inconsistent with Neder); United States v. Brown, 202 F.3d 691, 701 n. 19 (4th Cir.2000) (same). Although we review for *680 prejudice here, a similar analysis is required. Compare Johnson, 520 U.S. at 470, 117 S.Ct. 1544 with Neder, 527 U.S. at 18-19, 119 S.Ct. 1827.
In this case, the government offered little or no direct evidence supporting the jurisdictional element — apart from the mere fact that the robberies targeted drug trafficking proceeds. As a result, the defendants had nothing to controvert. In short, neither side presented evidence directly addressing the jurisdictional issue we now consider. But, of course “[i]t is axiomatic that, in a criminal case, the government must prove each and every element of the crime beyond a reasonable doubt.” United States v. Macklin, 671 F.2d 60, 65 (2d Cir.1982). Under these circumstances, which include a supervening change in the law, we closely examine the record to determine whether the jury, had it been properly instructed, would have found the jurisdictional element satisfied, or whether the government failed to prove this element beyond a reasonable doubt.
1. Hobbs Act Conspiracy
Because the government proved a single conspiracy encompassing robberies of various drugs and drug proceeds, including cocaine and heroin, we find the interstate element satisfied for each defendant’s conspiracy conviction. The indictment charged — and the jury found — a single Hobbs Act conspiracy in which each of the defendants participated. In support of this charge, the government presented evidence of multiple robberies targeting cocaine and heroin, including one netting eight kilograms of cocaine outside John F. Kennedy International Airport, an attempted robbery at an apartment at 139th Street and Amsterdam Avenue in Manhattan, and two separate attempts at an address on Webb Avenue in the Bronx. Robles himself participated in at least three of these robberies, though neither Need-ham nor Thompson was directly implicated. Because this evidence suggested the possibility of multiple conspiracies, the district court properly instructed the jury that, in order to convict, it was required to find the single conspiracy alleged in the indictment. The jury did so, crediting the government’s allegation that the defendants commonly belonged to a conspiracy to steal drugs and drug proceeds. See United States v. Maldonado-Rivera, 922 F.2d 934, 963 (2d Cir.1990) (“[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance.”). Thus, if the overall conspiracy targeted products moving in interstate commerce, as the cocaine and heroin robberies suggest, all three defendants are liable.
To establish the jurisdictional element for Hobbs Act conspiracy, “all that need be shown is the possibility or potential of an effect on interstate commerce, not an actual effect.” United States v. Jones, 30 F.3d 276, 285 (2d Cir.1994); see United States v. Arena, 180 F.3d 380, 390 (2d Cir.1999). A conspiracy that targets cocaine and heroin, and the proceeds from their sale, undoubtedly meets this standard. These narcotics cannot be produced in New York, and thus necessarily travel in interstate commerce. Defendants do not suggest otherwise. While the government did not produce any expert testimony on this subject, our Court has held as recently as Gomez that a jury is capable of concluding, based on its lay knowledge, that cocaine is imported into the United States. See 580 F.3d at 102 (citing Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir.2004)). We have no reason to take *681 a different view here. Finding the jurisdictional element satisfied beyond a reasonable doubt, we affirm the defendants’ Hobbs Act conspiracy convictions.
2. Hobbs Act Robbery and Attempted Robbery
We reach a different conclusion with respect to the defendants’ substantive robbery and attempted robbery convictions: we conclude that the district court’s error was prejudicial and thus affected the defendants’ substantial rights. While Hobbs Act jurisdiction must be proven beyond a reasonable doubt, just as any other element, we recognize that the effect on interstate commerce need only be slight or subtle. See United States v. Angelilli, 660 F.2d 23, 35 (2d Cir.1981); United States v. Jamison, 299 F.3d 114, 118 (2d Cir.2002) (“We have long recognized that the requirement of showing an effect on commerce involves only a minimal burden of proving a connection to interstate commerce, and is satisfied by conduct that affects commerce in any way or degree.” (internal quotation marks omitted)). Nonetheless, the evidence relating to these individual robberies did not meet even this modest threshold beyond a reasonable doubt.
Each of the substantive robberies charged involved only marijuana and the proceeds from its sale. The robbery at 4434 Baychester Avenue netted approximately $600,000 in marijuana trafficking proceeds, Thompson’s robbery at 2615 Grand Concourse brought in $15,000 to $30,000 of the same, and no estimate was ever offered for Needham’s attempted robbery at 22 Short Street.
Apart from the simple amount of money obtained, the government offered no evidence to support an interstate nexus for the completed robberies. It presented no proof that the marijuana sold by the victims had originated out of state, that it was sold to out-of-state customers, that the victims themselves crossed state lines in conducting their business, or that the robbery depleted assets that would have purchased goods in interstate commerce. Similarly, in the case of Needham’s attempted robbery, the government offered no proof as to the amount of money she expected to seize on Short Street, the origin of the marijuana, whether customers hailed from out of state, or how the robbery, if successful, might have affected the business enterprise.
Finally, the government did not provide testimony of any kind about marijuana production and trafficking in New York. Yet unlike cocaine or heroin — but like many legal products — marijuana may be grown, processed, and sold entirely within New York. See Gomez, 580 F.3d at 102 n. 5 (recognizing that marijuana can be grown in-state, whereas cocaine is exclusively foreign in origin); cf. United States v. Peterson, 236 F.3d 848, 855 (7th Cir.2001) (finding that the government failed to demonstrate victim’s marijuana trade involved drugs originating out of state and vacating Hobbs Act conviction). Reports documenting the frequency and scale of instate marijuana production, often implicating tens or hundreds of thousands of dollars, are abundant.[4]
*682 Reviewing for prejudice, we find that the erroneous instruction may very well have affected the outcome of the district court proceedings for each of the defendants’ substantive robbery convictions. On the present record, the government’s proof is simply too bare to establish, without more, the required interstate nexus. In Hobbs Act cases, an interstate nexus may be demonstrated where the government introduces evidence that the robbery was of a business (legal or illegal) that (1) serves out-of-state customers, see United States v. Farrish, 122 F.3d 146, 149 (2d Cir.1997) (interstate commerce element proven by evidence that robbed garage, located near interstate portals, “regularly served cars bearing out-of-state license plates,” permitting inference that the robberies might discourage out-of-state business); (2) purchases “a commodity that travels in interstate commerce,” see United States v. Jones, 30 F.3d 276, 285-86 (2d Cir.1994) (interstate commerce affected by robbery of $9,000 from narcotics buyer, depleting his assets and thereby limiting his ability to make future purchases of cocaine); or (3) purchases goods in-state that originated out-of-state, see United States v. Wilkerson, 361 F.3d 717, 730-32 (2d Cir.2004) (finding Hobbs Act’s jurisdictional element satisfied where defendant robbed two men who owned a landscaping company that served only in-state customers and that purchased supplies only from an instate retailer, because the retailer in turn purchased some of the supplies from out of state); United States v. Elias, 285 F.3d 183, 189 (2d Cir.2002) (“[A] robbery of a local distribution or retail enterprise may be said to affect interstate commerce if the robbery impairs the ability of the local enterprise to acquire — whether from out-of-state or in-state suppliers — goods originating out-of-state.”). This is not a high hurdle, and one that the government likely would have met had it introduced evidence regarding the interstate nature of the targeted drug dealers’ businesses.
But while an interstate effect may be “subtle” or “slight,” it must still be proven to a jury beyond a reasonable doubt. Here, there was no proof whatsoever on the interstate issue. Moreover, the jury’s acquittals on a variety of other counts suggest that it had reason to doubt aspects of the government’s case. For the Court, as opposed to a jury, to find that the government’s limited evidence constitutes proof of interstate effect beyond a reasonable doubt would create an unacceptably broad presumption, one that is inconsistent with the Sixth and Fourteenth Amendments.[5] In essence, it would treat *683 any robbery involving $600,000 or more as a sufficient basis for federal jurisdiction as a matter of law.[6] We recognize, of course, that $600,000 is a substantial sum of money. But the sheer amount of money, standing alone, does not demonstrate an interstate effect. Like the other circuits that have considered this type of bright-line rule, we decline to adopt such a presumption. See United States v. Turner, 272 F.3d 380, 387-89 (6th Cir.2001) (holding that the mere fact a robbery targeted illegal gambling proceeds of one to two million dollars did not prove interstate nexus); United States v. McCormack, 371 F.3d 22, 28 (1st Cir.2004), overturned on other grounds, 543 U.S. 1098, 125 S.Ct. 992, 160 L.Ed.2d 998 (2005) (“We decline to adopt any bright-line rule that an extortionate demand of a certain sum from an individual can automatically satisfy the commerce element of the Hobbs Act.”). The fact that the robberies here targeted the proceeds of marijuana sales, as opposed to some other product, does not alter this analysis — despite our colleague’s views to the contrary.
The dissent argues that we may find federal jurisdiction simply because these robberies involved marijuana. In this view, because the commerce power “encompasses marijuana that is grown, processed, and sold entirely within a single state,” neither we nor a jury need look any further. Dissent at 5. Our Court, of course, has rejected this proposition before, in Parkes itself, much as it has entertained and discarded the very reasoning that the dissent relies on here. See Parkes, 497 F.3d at 229. The dissent’s reasoning would effectively reinstate the presumption we jettisoned in Parkes, by postulating a rule that produces the same result only using slightly different words.
In particular, the dissent attempts to bootstrap our Hobbs Act jurisprudence to the Supreme Court’s interpretation of the Controlled Substances Act (CSA), 21 U.S.C. § 801 et seq., in Gonzales v. Raich, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). Yet, as we have said before, these two statutory schemes are crucially different: the Hobbs Act contains a jurisdictional element, requiring that the government prove an effect on interstate commerce in every case, while the CSA does not. Compare 18 U.S.C. § 1951(a), with 21 U.S.C. §§ 841(a)(1), 844(a). Thus, while Raich found that the CSA could be applied to purely intrastate cultivation and sale of marijuana, it considered only Congress’s broad power to regulate drug offenses under the Commerce Clause. The Court did not purport to interpret the Hobbs Act, where Congress chose to require proof of an interstate nexus in each individual case. The difference between these two enterprises — Congress’s ability to regulate a class of economic activity, versus the specific interstate effects of one transaction or offense — is obvious. As the Supreme Court put it in Raich, “[w]e have never *684 required Congress to legislate with scientific exactitude” in order to satisfy the Commerce Clause. Raich, 545 U.S. at 17, 125 S.Ct. 2195; see United States v. Nascimento, 491 F.Sd 25, 41-43 (1st Cir.2007). What matters, instead, is that the overall class of activity has the requisite interstate effects. See United States v. Morales-De Jesús, 372 F.3d 6, 18 (1st Cir.2004). So long as “a general regulatory statute bears a substantial relation to commerce,” the fact that individual transactions have a negligible impact on interstate commerce “is of no consequence” in determining Congress’s commerce power. Raich, 545 U.S. at 17, 125 S.Ct. 2195 (internal quotation marks omitted).
Yet Congress has chosen to require exactly this kind of precision in prosecutions under the Hobbs Act. In every case, the government must prove that the alleged offense had some effect on interstate commerce — not simply that the general activity, taken in toto, has such an effect. See 18 U.S.C. § 1951(a); Parkes, 497 F.3d at 230 n. 8.[7] The purpose of this requirement is to avoid transforming every robbery and extortion, which are quintessential state crimes, into federal offenses. See Perrotta, 313 F.3d at 37. Yet that is precisely what the dissent’s rule would accomplish. Its reasoning would extend not only to robberies involving marijuana but any product Congress may regulate, legal or illegal, in any amount. Indeed, it is hard to imagine a robbery that would not be a federal crime if the dissent had its way.[8]
The dissent argues that its rule is consistent with our decision in Parkes because the jury would still be called upon to make a finding, albeit one with a predetermined result. Our colleague concedes that this approach may seem “formalistic,” because the outcome is “virtually certain.” Dissent at 691. But the dissent’s rule is not a formalism, it is a fiction. In effect, the *685 proposed instructions would tell a jury that all robberies involving narcotics — or anything else Congress has the power to regulate — affect interstate commerce as a matter of law. The jury’s finding would not depend on any facts demonstrating an effect on interstate commerce. Although the dissent appears to think otherwise, this is precisely what it means to say something is established as a matter of law, and it is precisely the rule we rejected in Parkes. To press his point, our colleague goes so far as to publish model jury instructions telling a jury how to resolve a factual issue solidly within its province. Because these instructions misapply Raich, substituting its holding for the required factual finding, we do not view them as proper guidance for a jury considering charges under the Hobbs Act.
Marijuana, as noted, may be entirely grown, processed, and sold in-state. Under these circumstances, finding jurisdiction simply because the robberies involved a substance regulated by Congress would effectively undo the jury right recognized in Parkes. See 497 F.3d at 226-30; see also Peterson, 236 F.3d at 855 (vacating Hobbs Act robbery conviction involving marijuana where the government failed to adduce any satisfactory proof of an interstate nexus). Athough this interstate nexus need be only slight, it cannot be reduced to the point of vanishing altogether, as the government and the dissent would do here.
IV. CONCLUSION
For the foregoing reasons, we hereby REVERSE Robles’s and Needham’s convictions for Hobbs Act robbery (Count 2), Thompson’s conviction for Hobbs Act robbery (Count 7), and Needham’s conviction for Hobbs Act attempted robbery (Count 6), and we VACATE the judgments of the district court. The defendants’ convictions are AFFIRMED in all other respects. We REMAND the case to the district court for further proceedings consistent with this opinion.

. Parkes, we note, was approved unanimously by the active members of this Court through our "mini en banc” process, because it represented a change in controlling law at the time. See 497 F.3d at 230 n. 7.

. The remaining issues raised on this appeal are resolved in a contemporaneously issued summary order.

. As noted, beyond these offenses, the government presented evidence of nearly a dozen other robberies or attempted robberies in which the defendants were allegedly involved, either directly or as co-conspirators. On appeal, the government argues as though this evidence was fully credited by the jury at trial. This was not the case. While the government obtained convictions on the offenses described above, as well as Hobbs Act conspiracy, the jury acquitted the defendants on a wide range of charges related to these other robberies and firearms possession. In particular, the jury acquitted Robles of three alleged robberies, aiding and abetting firearms possession, and conspiracy to distribute narcotics (Counts 3-5, 8-10, 13). It acquitted Needham of one alleged robbery, aiding and abetting firearms possession, and conspiracy to distribute narcotics (Counts 5, 11, 13). And it acquitted Thompson of weapons possession and conspiracy to distribute narcotics (Counts 12 & 13). A fourth defendant, Luis Sanchez, was acquitted of all charges. These results suggest that the jury had reservations about significant portions of the government’s case.

. See, e.g., National Drug Intelligence Center, National Cannabis Cultivation Trends (2008), http://www.justice.gov/ndic/pubs37/37035/ national.htm# Tablet (reporting the seizure of more than 14,000 marijuana plants in New York state in 2008); U.S. Drug Enforcement Administration, New York Fact Sheet (2008), http://www.justice.gov/dea/pubs/state — fact sheets/newyork.html (noting that while most marijuana is produced out of state, "[i]ndoor marijuana grows are becoming more prevalent in the New York City area. Some of these indoor grows are highly sophisticated and are designed to yield substantial quanti *682 ties of high potency marijuana.”); John Eligon, Firefighter Accused of Role in Marijuana-Growing Ring, N.Y. Times, Feb. 26, 2009 (describing 100 marijuana plants discovered growing in a Queens basement, with an estimated value of $500,000); Larry Celona & Andy Geller, High Times for U.S. Biz, N.Y. Post, Apr. 13, 2009 (reporting that "[sjince Oct. 1, [2009,] the Drug Enforcement Administration has broken up eight hydroponic pot-growing set-ups around the state — with five in the Big Apple”); Joseph B. Treaster, Urban Grow-It-Yourselfers Cash In on Marijuana, N.Y. Times, Aug. 5, 1994, at B3 (discussing the extensive practice of indoor marijuana growing in New York City).

. In one crucial respect, this case is different from the claims reviewed in Parkes, where we upheld a Hobbs Act conviction for the attempted robbery of a drug dealer involving $4,000 and a substantial quantity of marijuana. See 497 F.3d at 230-31. Unlike this case, the defendants there challenged the sufficiency of the government's evidence, after being convicted by a properly instructed jury. See id. at 230. A reviewing court considering the sufficiency of the evidence applies one of the most generous standards available, asking whether "if, drawing all inferences in favor of the prosecution and viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the *683 essential elements of the crime beyond a reasonable doubt.” United States v. Santos, 449 F.3d 93, 102 (2d Cir.2006); see Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Based on the evidence offered at trial, including expert testimony about the predominant sources of marijuana, Parkes ultimately credited the jury’s finding that the interstate element had been met. See 497 F.3d at 230-31. Here, there is no valid jury finding on the interstate element that secures federal jurisdiction, because the jury was not properly instructed; hence, a sufficiency of the evidence standard is inapplicable. Instead, we review for prejudice as described above.

. We note that one of the individual robberies at issue, the Grand Concourse robbery, netted only $15,000 to $30,000. The dissent does not address whether that amount would be enough to meet its test, nor even where the critical threshold might be.

. The dissent relies heavily on our reiteration in Parkes that the reach of the Hobbs Act is "coextensive with that of the Commerce Clause of the United States Constitution,” 497 F.3d at 230 n. 8. Yet our colleague ignores and omits the explanation that immediately followed that statement. As we said there, "this means only that a de minimis showing of an effect on interstate commerce is sufficient to satisfy this element; it does not obviate the need for some showing.” Id. (emphasis added). Indeed, Parkes itself refused to rest on the mere fact that the robbery in question involved marijuana, looking for a specific effect on interstate commerce notwithstanding the Supreme Court’s recent decision in Raich. See Parkes, 497 F.3d at 231.

. Congress, of course, regulates thousands of goods and services pursuant to its commerce power. Raich’s holding with respect to marijuana relied directly on a case affirming Congress's authority to regulate homegrown wheat. See Raich, 545 U.S. at 17-20, 125 S.Ct. 2195; Wickard v. Filburn, 317 U.S. 111, 128-29, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (considering the interstate effects of domestic wheat production). Yet by the dissent’s logic, if Congress has the authority to regulate a product writ large, then any robbery involving that product affects interstate commerce per se, and the jury should be so instructed. A robbery targeting $100 from the sale of wheat, gravel, or prescription drugs would all but automatically meet the Hobbs Act’s jurisdictional element, even if the products at issue originated entirely in-state. See Wickard, 317 U.S. at 128-29, 63 S.Ct. 82; D.A.S. Sand & Gravel, Inc. v. Chao, 386 F.3d 460, 463-64 (2d Cir.2004) (commerce power extends to regulation of gravel sold entirely intrastate). We have repeatedly said that establishing Hobbs Act jurisdiction requires a "case-by-case inquiry” into a robbery’s effects on interstate commerce. Parkes, 497 F.3d at 231 n. 11. That principle runs directly contrary to the categorical rule that the dissent seeks to import from the Controlled Substances Act. The government would be relieved from proving that the offense actually affected interstate commerce, as the Hobbs Act requires, and could simply gesture toward Congress's power to regulate the overall class of activity at issue. Based on our precedent, we cannot embrace this proposition.