12-3758-cr
*United States v. Santana*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of January, two thousand fourteen.

PRESENT: DEBRA ANN LIVINGSTON,
SUSAN L. CARNEY,

                    Circuit Judges,

JOHN G. KOELTL,[*]

                    District Judge.

---

UNITED STATES OF AMERICA,

                    *Appellee*,

  -v-                                          No. 12-3758-cr

RAUL SANTANA,

                    *Defendant-Appellant*,

HIRAM J. TORRES, JOSE GONZALES,

                    *Defendants*.

---

[*] The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

JESSE M. SIEGEL, Law Office of Jesse M. Siegel, New York, NY, *for Defendant-Appellant*.

TODD W. BLANCHE (Michael A. Levy, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Raul Santana appeals from a judgment of the United States District Court for the Southern District of New York (Stein, *J.*), entered September 7, 2012. Santana was convicted, after a jury trial, of one count of conspiracy to commit Hobbs Act robberies, in violation of 18 U.S.C. § 1951; two counts of substantive Hobbs Act robbery for the March 20, 2010 and March 25, 2010 robberies, also in violation of 18 U.S.C. § 1951; and two counts of use of a firearm in furtherance of a crime of violence for each of the two charged robberies, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (c)(1)(C)(i). We assume the parties' familiarity with the facts of the case and the issues presented for appellate review.

I.

First, Santana argues as to Count 4 that there was insufficient evidence to establish that he possessed a firearm or aided and abetted the possession of a firearm by his coconspirator, Hiram Torres, in connection with the March 20 robbery of Hector Flores. We review the sufficiency of the evidence following a criminal conviction "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor." *United States v. Corsey*, 723 F.3d 366, 373 (2d Cir. 2013) (internal quotation marks omitted). "A defendant challenging the sufficiency of the evidence . . . bears a heavy burden because we must uphold the judgment of

2

conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vilar*, 729 F.3d 62, 91 (2d Cir. 2013) (emphasis in original) (internal quotation marks, citation, and alteration omitted).

Under the applicable statute, a defendant committing a crime of violence will be additionally punished if he "uses or carries a firearm" or, "in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). The district court instructed the jury on three theories of § 924(c) liability: (1) that Santana personally carried or possessed the firearm during the March 20 robbery; (2) that he aided and abetted Torres as principal; and (3) that he entered a conspiracy in which it was reasonably foreseeable that a gun would be used, and Torres used or possessed the firearm in furtherance of that conspiracy – also known as *Pinkerton* liability. *See Pinkerton v. United States*, 328 U.S. 640 (1946). We conclude that the evidence was sufficient as to the second and third of these theories, and do not reach the actual possession ground.

First, regarding Santana's liability for personally carrying or possessing a weapon on March 20, the evidence at trial was conflicted. Flores testified that both Santana and Torres had guns, while Torres testified that only he was armed. Pursuant to our "exceedingly deferential" review at this stage, however, *see United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012), we are unable to conclude that no reasonable jury could have credited Flores's testimony that Santana himself was armed. But we need not rely on this ground, because we find that the evidence sufficed under the other two theories; therefore, we do not decide the question.

The evidence was sufficient to establish that Santana aided and abetted Torres's use of a firearm during the March 20 robbery. *See* 18 U.S.C. § 2. Under this Circuit's law, an accomplice

3

can be convicted for aiding and abetting a violation of § 924(c) if there is "proof that he performed some act that directly facilitated or encouraged the use or carrying of a firearm." *United States v. Medina*, 32 F.3d 40, 45 (2d Cir. 1994).[1] It is insufficient that a defendant simply "know[] (or hav[e] reason to know) that a gun will be used or carried in relation to the underlying crime . . . without performing some affirmative act relating to that firearm." *Id.* at 46. But in *Medina*, the defendant was not present at the scene of the crime, and we made clear that "a defendant who is present but unarmed during the commission of a crime may ([ ] by the division of labor) make it easier for another to carry a firearm and therefore aid and abet that act." *Id.* at 47.

Here, the evidence showed that Santana actively facilitated Torres's use of the firearm by "division of labor." Santana entered the apartment with Torres, helped to subdue Flores, and then Santana guarded Flores while Torres stole untaxed cigarettes, marijuana, jewelry, and electronics. Santana's role exceeded the type of assistance to a gunman in a robbery that we have previously found sufficient for an aiding and abetting conviction under § 924(c). *See United States v. Gomez*, 580 F.3d 94, 102-03 (2d Cir. 2009) (holding that there was sufficient evidence to convict an accomplice who was "'present' as a lookout at the scene and [who] played a critical supportive role in the armed robbery" by acting as a driver of a secondary vehicle).

---

[1] The standard for aiding and abetting a violation of 18 U.S.C. § 924(c) is currently unsettled among the federal circuits. *Compare, e.g.*, *United States v. Wiseman*, 172 F.3d 1196, 1217 (10th Cir. 1999), *and United States v. Harrington*, 108 F.3d 1460, 1471 (D.C. Cir. 1997) (holding that no active facilitation of the principal's use of the firearm is necessary for an aiding and abetting conviction under § 924(c)), *with, e.g.*, *Medina*, 32 F.3d at 45 (requiring some active involvement in the principal's use of the firearm for conviction on aiding and abetting). The Supreme Court has granted certiorari to resolve this split of authority. *See Rosemond v. United States*, No. 12-895 (U.S. argued Nov. 12, 2013). *Rosemond*'s outcome will not affect the result here because this Circuit requires active facilitation or encouragement in order to establish aiding and abetting liability, which imposes the strictest standard of proof on the government, and the trial court correctly instructed the jury with that high standard.

The evidence was also sufficient to establish Santana's liability pursuant to *Pinkerton* because Torres's use of the firearm in violation of § 924(c) was an offense "committed by another coconspirator in furtherance of the conspiracy and was a reasonably foreseeable consequence of the conspiratorial agreement." *United States v. Pimentel*, 83 F.3d 55, 58 (2d Cir. 1996) (upholding a § 924(c) conviction under the *Pinkerton* theory). The jury found that Santana was guilty of conspiring with Torres to rob Flores, and based on the prior robbery in which Santana participated with Torres that involved the use of a firearm, it was reasonably foreseeable that Torres would use a firearm in this case. Accordingly, Santana's challenge to the sufficiency of the evidence fails.

II.

Santana next asserts that the district court's instruction to the jury regarding the jurisdictional element of the Hobbs Act was erroneous. Because there was no objection at trial to this instruction, we review only for plain error. *See United States v. Bruno*, 383 F.3d 65, 78 (2d Cir. 2004) ("Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." (alteration and internal quotation marks omitted)). Convictions under the Hobbs Act require that the government "prove, as an element, that a defendant's conduct affected interstate commerce," although this effect "may be very slight." *United States v. Needham*, 604 F.3d 673, 677-78 (2d Cir. 2010) (internal quotation marks omitted).

Even assuming that the district court's instruction was erroneous, Santana's argument is unavailing because his substantial rights were not affected. *See Bruno*, 383 F.3d at 79 (non-structural error "affects a defendant's substantial rights if it is prejudicial and it affected the outcome of the district court proceedings" (internal quotation marks omitted)). The parties stipulated that the

5

untaxed cigarettes stolen as part of the March 2010 robberies affected commerce as necessary for

Hobbs Act purposes. A jury instructed in the manner that Santana requests would necessarily have

found this element satisfied. Indeed, the stipulation regarding the untaxed cigarettes constitutes

uncontroverted proof on this issue – more evidence than was available in *United States v. Needham*,

where we upheld a conviction despite the lack of a jury finding regarding interstate commerce in a

Hobbs Act case. *See* 604 F.3d at 679-80 (concluding, despite "little or no direct evidence" on this

point, that a conspiracy to steal cocaine, heroin, and proceeds from the sale of these drugs

necessarily involved interstate commerce because these narcotics could not have been produced in

New York). Accordingly, Santana's substantial rights were not affected.[2]

## III.

The last issue presented for our review concerns Santana's seven-year sentence on Count 4,

which contained an enhancement for brandishing a firearm under 18 U.S.C. § 924(c)(1)(A)(ii). The

Supreme Court decided *Alleyne v. United States* after the Defendant-Appellant's brief was filed in

this case, and held that a factor that increases a mandatory minimum sentence is an "element" of a

crime that must be found by a jury beyond a reasonable doubt under *Apprendi v. New Jersey*, 530

U.S. 466 (2000). *Alleyne*, 133 S. Ct. 2151, 2162-63 (2013). The district court correctly applied the

---

[2] Santana also argues that the district court erred in instructing the jury that even a "minimal" effect on interstate commerce is sufficient to satisfy this element of a Hobbs Act robbery charge. As Santana concedes, however, the prior decisions of this Circuit clearly foreclose this argument. *See, e.g.*, *United States v. Parkes*, 497 F.3d 220, 230 (2d Cir. 2007) ("The Hobbs Act prohibits robberies that affect interstate commerce in any way or degree, so the required showing of an effect on interstate commerce is *de minimis*." (internal quotation marks and citation omitted)); *United States v. Elias*, 285 F.3d 183, 188 (2d Cir. 2002). This panel is bound by well-established precedent in this area and cannot reexamine these conclusions here.

law as it stood at the time of Santana's trial and sentence, but our review must take the decision in

*Alleyne* into account. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the

conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct

review or not yet final."); *see also United States v. Gutierrez Rodriguez*, 288 F.3d 472, 476 n.2 (2d

Cir. 2002).

Errors "not brought to the court's attention" are reviewed for plain error, Fed. R. Crim. P.

52(b), including in cases where a change in applicable law occurred after conviction, *see Johnson

v. United States*, 520 U.S. 461, 465-66 (1997).[3] This principle holds for factors affecting a

defendant's sentence that should have been submitted for a jury finding beyond a reasonable doubt,

but were not. *See United States v. Joyner*, 313 F.3d 40, 45-46 (2d Cir. 2002); *United States v.

Thomas*, 274 F.3d 655, 667-71 (2d Cir. 2001) (en banc).

Our review for plain error has four components. The first three requirements are "(1) error,

(2) that is plain, and (3) that affects substantial rights." *Thomas*, 274 F.3d at 667 (quoting *Johnson*,

520 U.S. at 466-67) (internal quotation marks and alteration omitted). If we find that these three

conditions are satisfied, the court "may then exercise its discretion to notice a forfeited error, but

---

[3] As our Court noted in *United States v. Needham*, our Court has in the past "applied a 'modified' plain error analysis in cases 'where, as here, the source of plain error is a supervening decision,'" under which "the government, not the defendant, 'bears the burden to demonstrate that the error was harmless.'" 604 F.3d at 678 (quoting *United States v. Henry*, 325 F.3d 93, 100 (2d Cir. 2003)) (ellipsis in original omitted). This may not be the correct standard, however, in light of the Supreme Court's decision in *Johnson v. United States*, where the Court applied plain error review where the error stemmed from a change in Supreme Court law decided after the defendant's conviction. *See* 520 U.S. at 466. We "need not resolve this open question because, whether plain error or some modified approach is applied, our conclusions would be the same." *Needham*, 604 F.3d at 678.

only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration omitted) (quoting *Johnson*, 520 U.S. at 467).

As the government acknowledges in its brief, the first three prongs of plain error review are generally satisfied where a defendant's sentence enhancement is based on a fact that should have been submitted to a jury. *See, e.g.*, *Joyner*, 313 F.3d at 45-46. This proposition holds on the facts of this case: In light of *Alleyne*, it was plainly an error that Santana's sentence was increased based on the brandishing of a firearm without a specific finding of this fact by a jury. Indeed, the particular increase in mandatory minimum sentence for which the *Alleyne* Court required a jury finding was the very one in question here – whether the defendant brandished a weapon in furtherance of a Hobbs Act robbery. *See* 131 S. Ct. at 2155-56. Moreover, although this was not a "structural error," we assume that it was nonetheless "prejudicial and it affected the outcome of the district court proceedings." *Bruno*, 383 F.3d at 79.

Even if these initial elements of plain error are satisfied, however, we conclude that the final element – the question whether the error affects the fairness or public reputation of the judicial proceeding – is not. Where the evidence supporting an element that was not submitted to the jury is "'overwhelming' and 'essentially uncontroverted,'" we will affirm despite the error. *United States v. Cotton*, 535 U.S. 625, 633 (2002) (quoting *Johnson*, 520 U.S. at 470). In other words, "[w]e will not reverse for plain error where there is no disagreement as to the truth of the pertinent facts, and the record as a whole casts no doubt on the accuracy of that fact." *Joyner*, 313 F.3d at 46 (internal quotation marks and alteration in original omitted).

The evidence was uniform that Torres carried a weapon during the March 20 robbery, which could support Santana's guilt for brandishing the firearm either for aiding and abetting or under *Pinkerton*. At trial, Torres testified that he had a gun "[i]n [his] hand" when he and Santana threatened Flores during the March 20 robbery. Flores stated that when his assailants entered the apartment during the first robbery, "each of them was carrying a gun," and that, upon entering, "they put a gun in [sic] my head and they direct me to the bathroom."

Under 18 U.S.C. § 924(c)(4), "brandish" is defined to mean "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." Santana does not argue on appeal that Torres's actions do not constitute brandishing under the statute. We conclude that the evidence supporting Santana's conviction for brandishing a firearm was "overwhelming and essentially uncontroverted," and as a result, the error here did not "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Cotton*, 535 U.S. at 633 (internal quotation marks omitted). Accordingly, we affirm Santana's sentence on Count 4.

We have considered all of Defendant-Appellant's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9