14-1908(L)
*United States v. McIntosh*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## AMENDED SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of January, two thousand twenty-three.

PRESENT:  JOHN M. WALKER, JR.,
RAYMOND J. LOHIER, JR.,
*Circuit Judges*,
TIMOTHY C. STANCEU,*
*Judge*.

-----------------------------------------------------------------------

UNITED STATES OF AMERICA,
*Appellee-Cross-Appellant*,

v.    Nos.  14-1908,  14-3922, 17-2623

LOUIS MCINTOSH, AKA Lou D, AKA Lou Diamond, AKA G,
*Defendant-Appellant-Cross-Appellee*,

---

* Senior Judge Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

1

EDWARD RAMIREZ, AKA Taz, TERRENCE DUHANEY, AKA Bounty Killer, TURHAN JESSAMY, AKA Vay, QUINCY WILLIAMS, AKA Capone, TYRELL ROCK, AKA Smurf, NEIL MORGAN, AKA Steely,

*Defendants.*

------------------------------------------------------------------------

APPEARING FOR APPELLANT: STEVEN YUROWITZ, Newman & Greenberg LLP, New York, NY.

APPEARING FOR APPELLEE: SARAH KRISSOFF, Assistant United States Attorney (Thomas McKay, Assistant United States Attorney, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a ruling of the United States District Court for the Southern District of New York (Sidney H. Stein, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the amended judgment entered on August 8, 2017 is in part AFFIRMED and in part VACATED. The judgment of acquittal entered on January 17, 2014 is in part AFFIRMED and in part REVERSED. The case is REMANDED to the district court for resentencing.[1]

---

[1] This summary order was originally filed on January 31, 2022, with a concurrently filed opinion. *See United States v. McIntosh*, 24 F.4th 857 (2d Cir. 2022); *United States v. McIntosh*,

Appellant Louis McIntosh appeals from a 2017 amended judgment of conviction following a 2014 trial for several Hobbs Act robberies. The government cross-appeals from a district court judgment of acquittal vacating two counts of McIntosh's conviction. McIntosh raises several issues for review, three of which the government does not contest. McIntosh's uncontested arguments are: first, that his conviction on Count Two of the indictment was improper because conspiring to commit Hobbs Act robbery is not a crime of violence; second, that he was improperly sentenced because the district court did not take account of his firearm mandatory minimum sentence when calculating his predicate offense sentences; and, third, that the district court improperly found him jointly and severally liable for the robberies' proceeds.

---

No. 14-1908, 2022 WL 274225 (2d Cir. Jan. 31, 2022). On July 26, 2022, McIntosh filed a petition for a writ of certiorari with the Supreme Court. On November 7, 2022, the Supreme Court granted McIntosh's petition for a writ of certiorari, vacated our judgment, and remanded the case for further consideration in light of *United States v. Taylor*, 142 S. Ct. 2015 (2022), which held that attempted Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c). *See McIntosh v. United States*, 143 S. Ct. 399 (2022). Because *United States v. Taylor* only affects our analysis as to Count Six, and McIntosh has not yet been resentenced, *see United States v. McIntosh*, No. 7:11-cr-500-1 (SHS), Dkt. No. 387 (S.D.N.Y. Nov. 10, 2022) (adjourning resentencing to February 14, 2023), we now issue this amended summary order, which is substantively unchanged except as to our analysis regarding Count Six.

3

In addition, McIntosh claims that he was improperly convicted of Counts Seven and Eight because venue was not proper in the Southern District of New York and because the robbery at issue did not have a connection to interstate commerce. And, finally, he argues that the forfeiture and restitution orders should be vacated because he was not present when they were imposed and the amount calculated was not proven beyond a reasonable doubt. In its cross appeal, meanwhile, the government argues that the district court erred when it ruled that there was not enough evidence to convict McIntosh on Counts Five and Six.

This summary order addresses the above arguments. In addition, McIntosh argues that his forfeiture should be vacated because the district court did not enter a preliminary forfeiture order prior to sentencing, as required by Federal Rule of Criminal Procedure 32.2. He also asserts that he was improperly convicted of possessing firearms as a felon, Counts Twelve through Fourteen, because the government did not prove that he knew that he was a felon. A separate opinion issued concurrently with this summary order addresses these arguments.

We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

4

## I.    McIntosh's Uncontested Arguments

McIntosh first argues that his conviction on Count Two of the indictment was improper. Count Two alleged that he violated 18 U.S.C. § 924(c) by carrying firearms in furtherance of a conspiracy to commit Hobbs Act robbery. Section 924(c) criminalizes the use of firearms in furtherance of "any crime of violence." 18 U.S.C. § 924(c)(1)(A). We have since held, however, that conspiring to commit Hobbs Act robbery is not a "crime of violence" under § 924(c). *See United States v. Barrett*, 937 F.3d 126, 127 (2d Cir. 2019) ("*Davis* precludes us from concluding, as we did in our original opinion, that Barrett's Hobbs Act robbery conspiracy crime qualifies as a § 924(c) crime of violence." (citing *United States v. Davis*, 139 S. Ct. 2319, 2324 (2019))). As a result, McIntosh's conviction on Count Two is vacated.

McIntosh next challenges his sentence on the basis that the district court did not consider the severity of the mandatory minimum sentence imposed by McIntosh's firearm convictions when calculating his sentence for the Hobbs Act offenses. In doing so, the court followed our then controlling precedent. *See United States v. Chavez*, 549 F.3d 119, 135 (2d Cir. 2008). Subsequently, however, the Supreme Court held that a sentencing court *is* permitted to consider the mandatory minimum resulting from such offenses, abrogating *Chavez*. *See Dean v.*

*United States*, 137 S. Ct. 1170 (2017). We remand the case for resentencing in light of *Dean*.

Finally, McIntosh objects to being held jointly and severally liable for the proceeds of the robberies. At sentencing, the district court ordered McIntosh to pay $75,000 in forfeiture, the total amount stolen in the robberies, even though the evidence suggests that he received only a portion of that amount. In *Honeycutt v. United States*, the Supreme Court held that a different forfeiture statute precluded joint and several liability among conspirators. 137 S. Ct. 1626, 1632 (2017). We conclude and the government now concedes that *Honeycutt*'s reasoning applies with equal force to the forfeiture statute at issue here, 18 U.S.C. § 981(a)(1)(c). Accordingly, the forfeiture order is vacated, and the issue is remanded to be recalculated consistent with the understanding that *Honeycutt* prohibits joint and several liability under 18 U.S.C. § 981(a)(1)(c).[2]

---

[2] Given the government's concession, "we need not here decide whether *Honeycutt*'s reasoning applies equally in all respects to forfeiture orders under 18 U.S.C. § 981(a)(1)(C)." *United States v. Gil-Guerrero*, 759 F. App'x 12, 18 n.8 (2d Cir. 2018).

6

## II. McIntosh's Contested Arguments

### a. Counts Seven and Eight

McIntosh's first contested argument is that he was improperly convicted of Counts Seven and Eight, which allege the robbery of loan shark and wholesale ice cream salesman Robert Rizzatti in Lynbrook, Long Island. McIntosh contends that the Southern District of New York was not the appropriate venue for these counts and that the prosecution failed to establish the robbery's required connection to interstate commerce.

Venue "is *not* an element of a crime," and so it need only be proved by a preponderance of the evidence. *United States v. Rommy*, 506 F.3d 108, 119 (2d Cir. 2007) (quotation marks omitted). For Hobbs Act robbery and related firearms charges, venue is "proper in any district where interstate commerce is affected or where the alleged acts took place." *United States v. Davis*, 689 F.3d 179, 186 (2d Cir. 2012) (quotation marks and citation omitted).

In this case, the government sufficiently established venue. Rizzatti purchased ice cream for his business from a distributor located in the Southern District. The distributor, in turn, sourced the product from a factory in New Jersey. A loss of capital likely affected Rizzatti's future purchases, in turn affecting

interstate commerce. The government also introduced evidence showing that McIntosh took substantial steps toward the completion of the Lynbrook robbery in the Southern District, including meeting with and recruiting co-conspirators, gathering weapons beforehand, and dividing the proceeds of the robbery. *See United States v. Davis*, 689 F.3d 179, 190 (2d Cir. 2012) (holding that a defendant's telephone call to the Southern District to recruit co-conspirators contributed to making the district a proper venue for prosecution for attempted robbery). Both the effect on interstate commerce and the steps taken in the district are enough to establish proper venue in the Southern District of New York. Our precedent here is well-established and binding, and we decline McIntosh's invitation to have us reexamine it.

McIntosh also argues that the government did not show an effect on interstate commerce because it did not prove that the stolen money would have otherwise been used by Rizzatti to purchase ice cream. By stealing his money, however, McIntosh reduced Rizzatti's available funds, which would have at least marginally affected his ability to purchase ice cream in the future. Venue was proper in this case.

In addition to his venue arguments, McIntosh asserts that the Lynbrook robbery lacked a sufficient nexus to interstate commerce to satisfy the jurisdictional element of Hobbs Act robbery. *See* 18 U.S.C. § 1951(a). In a Hobbs Act prosecution, the burden of proving a nexus to interstate commerce is minimal and "may be satisfied by a showing of a very slight effect on interstate commerce." *United States v. Angelilli*, 660 F.2d 23, 35 (2d Cir. 1981). "[A]ll that need be shown is the possibility or potential of an effect on interstate commerce, not an actual effect." *United States v. Needham*, 604 F.3d 673, 680 (2d Cir. 2010) (abrogated on other grounds).

The evidence shows that Rizzatti was engaged in two informal businesses affecting interstate commerce: selling ice cream wholesale that was manufactured in and purchased from New Jersey, and loaning money to people in New York who used it for out-of-state contracts. McIntosh specifically sought to steal the cash Rizzatti used in conducting these enterprises, thus depleting the assets and affecting Rizzatti's ability to purchase more ice cream manufactured in New Jersey and to extend additional loans. *See Needham*, 604 F.3d at 680.

McIntosh responds that the government did not produce evidence that the money robbed would have been used in the furtherance of either business. But a

9

"very slight effect" on one's informal businesses is an inevitable result of unexpectedly losing a significant amount of money. McIntosh also argues that Rizzatti's testimony that his ice cream came from out of state was inadequate because he based this claim on a 1980s visit to a New Jersey manufacturing facility. McIntosh analogizes this to cases holding that evidence of a time when federal deposit insurance covered a bank could not be used to infer earlier or subsequent coverage. *See United States v. Sliker*, 751 F.2d 477, 484 (2d Cir. 1984); *United States v. Ali*, 266 F.3d 1242, 1244 (9th Cir. 2001); *United States v. Shively*, 715 F.2d 260, 265 (7th Cir. 1983). Rizzatti testified, however, that he believed the ice cream was sourced from New Jersey at the time of the robbery, and no contrary evidence was introduced. In the cases cited by McIntosh, no testimony was provided about contemporaneous coverage. As a result, they are inapposite.

The government brought the Lynbrook robbery charges in a proper venue and sufficiently established the interstate element. Thus, we affirm McIntosh's conviction on Counts Seven and Eight.

### b. The Forfeiture and Restitution Orders

Finally, McIntosh advances three arguments for why the forfeiture and restitution orders imposed as part of his final judgment should be vacated. In our accompanying opinion, we deal with the third argument—that the district court's failure to comply with a procedural deadline prohibits entry of the forfeiture order. McIntosh's other two points are addressed here.

As the government points out, McIntosh's argument that his presence was required at the imposition of the orders is moot. This summary order remands the case for resentencing, and so he will be present for the imposition of the new judgment. McIntosh also argues that the restitution and forfeiture amounts should have been calculated beyond a reasonable doubt. McIntosh acknowledges, however, that this argument is foreclosed by binding Second Circuit case law. *See United States v. Stevenson*, 834 F.3d 80, 86 (2d Cir. 2016) (affirming that a forfeiture amount need not be proven beyond a reasonable doubt); *see also United States v. Bengis*, 783 F.3d 407, 412 (2d Cir. 2015) (holding the same in the relevant restitution context). We affirm the district court on this point.

### III.    The Government's Cross Appeal

Counts Five and Six of the indictment charged McIntosh with attempting to rob drug dealers at a dice game on Cliff Street in Yonkers and using a firearm in the process. The jury convicted him on these counts, but the district court overturned the verdict in a January 17, 2014 judgment. The court determined that the evidence was insufficient to establish that McIntosh had "intended to rob" the dealers, as opposed to just assaulting them.

In our original summary order, we accepted the government's argument that the evidence was sufficient and that the district court erred in acquitting McIntosh on these counts. That analysis remains true, but only as to Count Five.

When reviewing a verdict, we are required to uphold the jury's finding if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making this determination, "we must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (quotation marks omitted).

Sufficient evidence supported the jury's finding that McIntosh possessed the required intent to rob the drug dealers. The jury heard testimony from three witnesses directly supporting this finding. One witness, Terrence Duhaney, stated that Ramirez and McIntosh "was [sic] saying the whole plan was to rob the dice game." J.A. at 355. Another, Hibah Lee, testified that McIntosh later told him that he went to his truck "to get the shotgun to go in [Biggs's] pocket and teach him a lesson," which meant to "rob him." *Id.* at 372. And, finally, Edward Ramirez stated that McIntosh was "talking about how . . . we went over [to Cliff Street] to catch jerks, which in street terms means a robbery, and we didn't get nothing." *Id.* at 327.

The jury also received circumstantial evidence supporting the conclusion that McIntosh planned to rob the dealers. First, the jury heard testimony that McIntosh gave his co-conspirators a "look" during the dice game, which they understood to mean that "it was going to be something." *Id.* at 325. After the "look," his co-conspirators began discussing "who was going to rob who for what," suggesting that McIntosh intended more than an assault. *Id.* Second, the jury received evidence showing that McIntosh initially went to Cliff Street to commit a different robbery, but that attempt was abandoned because too many

13

people were inside the house.  Although evidence of that planned robbery does not, by itself, establish McIntosh's intent to rob the dice game, it reinforces the conclusion that McIntosh decided to seize an opportunity to rob the dice game instead.

The district court, in finding this evidence inconclusive, emphasized that the "look" and the initial plan to commit a different robbery are insufficient to establish McIntosh's intent beyond a reasonable doubt.  The court also noted that the section of Ramirez's testimony quoted above could refer to the initial intention to commit a different robbery.  The district court then concluded that the testimony of Duhaney and Lee, on its own, is not enough to establish McIntosh's intent.  The district court's analysis thus separated the individual pieces of evidence, reasoning that no one piece meets the burden of proof.  When reviewing a jury's finding, however, the court must take account of "the totality of the government's case" and not restrict its analysis "to each element, as each fact may gain color from others."  *United States v. Riggi*, 541 F.3d 94, 108 (2d Cir. 2008) (quotation mark omitted).  When assessing the evidence holistically, we believe that a rational trier of fact could have found McIntosh guilty.

In his brief, McIntosh reiterates the district court's reasoning and raises several issues with the trustworthiness and consistency of the witnesses' testimony. Such arguments, however, go to the credibility and weight of the evidence, as to which we defer to the jury. *See Coplan*, 703 F.3d at 62. The district court erred when it overturned the jury's verdict as to Count Five.

As to Count Six, using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), we must affirm the district court's dismissal, because, regardless of the sufficiency of the evidence, the Supreme Court held in *Taylor v. United States*, 142 S. Ct. 2015 (2022) that attempted robbery—the predicate offense for Count Six—is not a crime of violence under 18 U.S.C. § 924(c).

Accordingly, the district court's January 17, 2014 judgment is reversed as to Count Five and is affirmed as to Count Six.

\* \* \*

McIntosh's conviction on Count Two is VACATED. The district court's judgment dismissing Count Five is REVERSED. The district court's judgment dismissing Count Six is AFFIRMED. The district court is AFFIRMED on Counts Seven and Eight. The district court's forfeiture order is VACATED as to the issue of joint and several liability. As explained in the precedential opinion filed

15

simultaneously with this order, the district court is AFFIRMED on the issue of the deadline under Federal Rule of Criminal Procedure 32.2 and on Counts Twelve through Fourteen.  The case is REMANDED to the district court for resentencing consistent with this order.

FOR THE COURT:

CATHERINE O'HAGAN WOLFE, Clerk of Court